RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN CIVIL LIBERTIES UNION OF
KENTUCKY, RAYMOND HARPER, and ED
MEREDITH,

               *Plaintiffs-Appellees,*

     *v.*

GRAYSON COUNTY, KENTUCKY,

               *Defendant-Appellant.*

No. 08-5548

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 01-00202—Joseph H. McKinley, Jr., District Judge.

Argued: April 23, 2009

Decided and Filed: January 14, 2010

Before: MOORE and McKEAGUE, Circuit Judges; FORESTER, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mathew D. Staver, LIBERTY COUNSEL, Orlando, Florida, for Appellant. William E. Sharp, GENERAL COUNSEL, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellees. **ON BRIEF:** Mathew D. Staver, LIBERTY COUNSEL, Orlando, Florida, Stephen M. Crampton, Mary E. McAlister, LIBERTY COUNSEL, Lynchburg, Virginia, for Appellant. William E. Sharp, David A. Friedman, GENERAL COUNSEL, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellees. Steven W. Fitschen, THE NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Amicus Curiae.

McKEAGUE, J., delivered the opinion of the court, in which FORESTER, D. J., joined. MOORE, J. (pp. 26-35), delivered a separate dissenting opinion.

---

[*]Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.   In 2001, the Grayson County Fiscal Court approved a proposal to hang a "Foundations of American Law and Government Display" in the county courthouse.  The display consisted of nine historical documents, including a copy of the Ten Commandments, along with an "Explanation Document" purporting to describe the significance of these items as foundations of law and government in the United States.  The district court found that the hanging of the display was shown to have been motivated by a predominantly religious purpose, and so held that the inclusion of the Ten Commandments in the display violated the Establishment Clause.  We hold that the district court erred in its assessment of the record, and conclude that plaintiffs have failed to present sufficient evidence to prove that the Fiscal Court had an impermissible purpose or that the Foundations Display endorses religion.

**I**

Reverend Chester Shartzer, a private citizen living in Grayson County, Kentucky, appeared at a Grayson County Fiscal Court meeting on September 18, 2001 in order to request that the Ten Commandments be placed in the Grayson County Courthouse as part of a "Foundations of American Law and Government Display" ("Foundations Display").   The display includes the Mayflower Compact, the Declaration of Independence, the Ten Commandments, the Magna Carta, *The Star Spangled Banner*, the National Motto, the Preamble to the Kentucky Constitution, the Bill of Rights, and a picture of Lady Justice.   The display also includes an "Explanation Document" purporting to describe the historical significance of each item.[1]

———————————

[1] This display appears to match exactly the displays at issue in *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005), and *Mercer County v. ACLU*, 432 F.3d 624, 626 (6th Cir. 2005).

The minutes recount what occurred at that September 18, 2001 meeting:

Reverend Chester Shartzer addressed the Court concerning his desire for the County to place the Ten Commandments in the County buildings. He said there were several Counties in the State who has [sic] them in their Courthouses. He explained that some Counties has [sic] them hanging in a group of other historical documents. He said he thought the Civil Liberties would look more favorable toward it if they were hanging in a grouping with the other historical documents. County Attorney, Tom Goff said there had been some hearings concerning this in some of the Eastern Counties of the State. Judge Logsdon and the Court members expressed the desire to place them in the County buildings and asked the County attorney if he thought they could do so in a way that would not cause problems for the County. He explained that there could be law suits filed against the County, and that he wanted to study the results of the hearings from the other Counties, before advising them.

Damon Hornback made a motion to place the Ten Commandments in the buildings. Motion died for lack of a second.

On motion by Sandy Farris, seconded by Damon Hornback, vote 7 for 0 against, be and it is ordered that:

The County place the Ten Commandments in the Court House along with the Historical documents of the Declaration of Independence, Bill of Rights, Mayflower Compact, Star Spangled Banner, National Anthem, Magna Charta [sic], Explanation Document, and a County Resolution, after County attorney Tom Goff has looked at the results of the hearings in other Counties, and if he thinks this can be done without legal action against the County.

On September 28, 2001, the Fiscal Court revisited the display. While there is no transcript of this second meeting, Shartzer recalled in deposition what he had said in support of his motion:

I simply said, "I was on my way up here, and I seen a stop sign. Some of [sic] guys went ahead of me and put that up. I seen a sign that said turn right. If I'd have went straight, I'd have went over a bank." I said, "There's not everybody [sic] going to read and understand half of these displays that we're talking about. Some people will not be more interested in the Declaration of Independence than a fly. Neither are they the Ten Commandments, but they're signs, they're signs about our heritage, they're signs about turning right. I'd like for my kid to hear somebody say, 'You oughtn't to kill somebody.' I'd like to hear somebody say to my children and I'd like to say to other kids, 'Don't try

to want everything the other guy's got.  Get it yourself or not have it.'"
I said, "That sign was put up for me.  It's a road sign.  I'm just wanting
to put a road sign in the courthouse as a directive for young people to see
where the heritage of America is" – "how it's embedded in my heart, and
I want it in other hearts.

(Shartzer Dep. at 29-30.)  After a 6-0 vote, the Fiscal Court ordered that "The following resolution along with the Historical Documents and the Ten Commandments be placed in a grouping in the Courthouse."  No resolution was ever composed or posted with the Foundations Display.  Once the Fiscal Court had approved, Shartzer obtained the display for installation; to that point, the members of the Fiscal Court had never seen the "Explanation Document" or any of the other display items.

With the help of two or three other private citizens, Shartzer posted the Foundations Display, which he had procured at private expense, on the second floor of the Grayson County Courthouse, where there was relatively little foot traffic.  There was no public ceremony accompanying the unveiling of the display.  Included as part of the authorized display from the beginning, along with the Ten Commandments and the other historical documents, was an "Explanation Document," consisting of an introduction describing the purpose of the Foundations Display and a paragraph-long explanation of each document's relation to the purpose.  The introduction includes a listing of the nine historical documents and provides:  "The Foundations of American Law and Government display contains documents that played a significant role in the foundation of our system of law and government."  Each of the following nine paragraphs of the Explanation Document contains a statement about the respective historical document's historical and legal significance. The significance of the Ten Commandments is described as follows:

The Ten Commandments have profoundly influenced the formation of
Western legal thought and the formation of our country.  That influence
is clearly seen in the Declaration of Independence, which declared that
"We hold these truths to be self-evident, that all men are created equal,
that they are endowed by their Creator with certain unalienable rights,
that among these are Life, Liberty, and the Pursuit of Happiness."  The
Ten Commandments provide the moral background of the Declaration of
Independence and the foundation of our legal tradition.

Several weeks after the display was posted, two private citizens, Ed Meredith and Raymond Harper, discussed the Fiscal Court's decision, after which the two went together to the courthouse and viewed the Foundations Display.  Meredith and Harper wrote a letter to the ACLU, and on November 27, 2001, the ACLU, Harper, and Meredith filed a complaint in the United States District Court for the Western District of Kentucky challenging the Foundations Display's presence in the county courthouse.  On May 15, 2002, the district court entered a preliminary injunction ordering the Fiscal Court to remove the Ten Commandments.  The Fiscal Court complied with the injunction and removed the Ten Commandments from the display, leaving the other eight items undisturbed.

The district court issued a stay of further proceedings pending resolution of similar litigation then pending before the Sixth Circuit in *ACLU v. McCreary County*, 6th Cir. No. 01-5935. The stay remained in place until September 5, 2006.  Once the stay was lifted, all parties filed motions for summary judgment.  On March 28, 2008, the district court granted summary judgment for the plaintiffs, permanently enjoining the display of the Ten Commandments as part of the Foundations Display.  Grayson County now appeals.

**II**

This court reviews a grant of summary judgment de novo.  *ACLU v. Mercer County*, 432 F.3d 624, 628 (6th Cir. 2005).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

## III

The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). The presence of one party with standing is sufficient. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). In order to demonstrate Article III standing, a plaintiff "must show that (1) he or she has suffered an 'injury in fact'; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision." *Am. Fed'n of Gov't Employees v. Clinton*, 180 F.3d 727, 729 (6th Cir. 1999). Each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Under the Establishment Clause, a plaintiff may demonstrate an injury by showing direct and unwelcome contact with a government-sponsored religious object. *ACLU v. Ashbrook*, 375 F.3d 484, 489 (6th Cir. 2004); *Adland v. Russ*, 307 F.3d 471, 478 (6th Cir. 2002). Direct and unwelcome contact requires more than a general grievance; the harm cannot be remote, vicarious or generalized. *Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 681-82 (6th Cir. 1994). The harm is sufficient when a plaintiff comes into direct, unwelcome contact with a government-sponsored religious object during business or recreational activities. *See Ashbrook*, 375 F.3d at 489; *Adland*, 307 F.3d at 478; *Washegesic*, 33 F.3d at 682.

The district court found that Meredith, Harper, and the ACLU had standing. Because we find no error in the finding that Meredith has standing, there is no need to address the standing of the other plaintiffs. *See Rumsfeld*, 547 U.S. at 52 n.2. Meredith alleged in his verified complaint that he used the "courthouse to transact civic business" and that, during the course of that business, he had "occasion to view the Ten Commandments display." The complaint further indicates that the exposure was unwelcome. These statements are sufficient to establish direct and unwelcome contact with the Ten Commandments. As this injury is caused by the inclusion of the Ten

Commandments in the Foundations Display and can be redressed by the removal of the Ten Commandments, Meredith has standing to challenge the inclusion of the Ten Commandments.[2]

## IV

The First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The defining principle of Establishment Clause jurisprudence is that the "First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion." *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). Neutrality, however, "is not so narrow a channel that the slightest deviation from an absolutely straight course leads to condemnation." *McCreary*, 545 U.S. at 876 (quoting *Sherbert v. Verner*, 374 U.S. 398, 422 (1963) (Harlan, J. dissenting)). The fact that "government must remain neutral in matters of religion does not foreclose it from ever taking religion into account." *Lee v. Weisman*, 505 U.S. 577, 627 (1992) (Souter, J., concurring).

The long-standing (but not always applied) test for determining whether government action violates the Establishment Clause was first articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Under the *Lemon* test, government action is upheld unless it is shown not to satisfy any of three elements: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Id.* at 612-13 (citations and quotation marks omitted). Since *Lemon*, the Supreme Court has revised the first two prongs of this test. In *McCreary County*, the court explained that, although a government's stated secular

---

[2]Grayson County contends that Meredith did not meet his burden at the summary judgment stage because he may not rest on allegations in the pleadings. However, Meredith signed a verified complaint that sets out allegations sufficient to establish standing. A verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Grayson County has not met Meredith's allegations with anything more than speculation. Therefore, Grayson County did not raise a genuine issue of material fact with regard to Meredith's standing. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

reason for erecting a display is usually given deference by the courts, the secular purpose must be "genuine, not a sham, and not merely secondary to a religious objective." *McCreary County*, 545 U.S. at 865. Where the government acts with the "ostensible and predominant purpose of advancing religion" it violates the constitutional touchstone of religious neutrality. *Id.* at 860. In addition, Justice O'Connor's concurring opinion in *Lynch v. Donnelly*, 465 U.S. 668 (1984), was incorporated into *Lemon*'s "effect" prong by the Court in *County of Allegheny v. ACLU*, 492 U.S. 573, 595 (1989) ("[The *Lynch*] concurrence articulates a method for determining whether the government's use of an object with religious meaning has the effect of endorsing."). The Court held that a challenged governmental action has a religious effect where it "is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their religious choices." *Id*. at 597.[3]

In 2005, the Supreme Court decided two Establishment Clause cases that provide substantial guidance regarding the governing legal framework: *McCreary County v. ACLU*, 545 U.S. 844 (2005), which applied the *Lemon* test in evaluating a county courthouse display that included the Ten Commandments; and *Van Perry v. Orden*, 545 U.S. 677 (2005), which held the display of a Ten Commandments monument on state grounds constitutional without applying the *Lemon* test. Because these cases provide the most recent Supreme Court guidance in the convoluted jurisprudence arising out of the Establishment Clause, we turn first to them.

**A**

In *McCreary County*, the Court reaffirmed the utility of the *Lemon* test. Two counties in Kentucky, McCreary County and Pulaski County, had placed the Ten Commandments, standing alone, in their respective courthouses. *McCreary County*, 545 U.S. at 851. McCreary County placed the Ten Commandments in its courthouse in response to a county order requiring the Ten Commandments to be displayed in a high-

---

[3]The district court held that Grayson County's Foundations Display violated the first two prongs of the *Lemon* test. It did not address the third prong, the excessive entanglement inquiry. As there is no argument from the parties regarding the third prong, we too consider only whether the Foundations Display is shown to have been marked by an impermissible purpose and effect.

traffic area of the courthouse. *Id.* The Pulaski County display was accompanied by a ceremony at which the county Judge-Executive and a local pastor spoke. *Id.*

After a district court preliminarily enjoined both counties' displays, the counties authorized expanded displays featuring large copies of the Ten Commandments surrounded by smaller copies of eight other documents with religious elements. *Id.* at 853. Each display was accompanied by a resolution reciting, among other things, that the Ten Commandments are "the precedent legal code upon which the civil and criminal codes of . . . Kentucky are founded" and that the "Founding Father[s] [had an] explicit understanding of the duty of elected officials to publicly acknowledge God as the source of America's strength and direction." *Id.* at 853.

After another preliminary injunction, the counties installed new displays. These displays included equally sized copies of the Ten Commandments, the Magna Carta, the Declaration of Independence, the Bill of Rights, *The Star Spangled Banner*, the Mayflower Compact, the National Motto, the Preamble to the Kentucky Constitution, and a picture of Lady Justice. *Id.* at 855-56. Neither county issued a new resolution explaining the new displays. The district court supplemented the injunction so as to encompass the new displays as well, and the Sixth Circuit affirmed. *Id.* at 857.

The Supreme Court granted certiorari and held that the displays violated the purpose prong of the *Lemon* test. It noted that, since *Lemon*, the Court had found that a government action had an improper purpose only four times.[4] *Id.* at 859. In rearticulating the test for assessing purpose, the Court made clear that the test requires "an understanding of official objective [that] emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts." *Id.* at 862.

The *McCreary County* Court noted that, while *Stone v. Graham* found a stand-alone display of the Ten Commandments unconstitutional, "*Stone* did not purport to decide the constitutionality of every possible way the Commandments might be set out

---

[4]*Stone v. Graham*, 449 US. 39, 42 (1980) (Ten Commandments display); *Wallace v. Jaffree*, 472 U.S. 38 (1985) (school prayer); *Edwards v. Aguillard*, 482 U.S. 578, 593 (1987) (act prohibiting the teaching of evolution); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308-09 (2000) (school prayer).

by the government."[5] *Id.* at 867. The Court found that the counties' first displays, like the display in *Stone*, had an unmistakable religious purpose because the displays consisted solely of the Ten Commandments standing alone. *Id.* at 869. The second display had a similarly unmistakable religious purpose because, though other documents were included in the display, highlighted references to God indicated that "[t]he display's unstinting focus was on religious passages" and the accompanying resolution mentioned "Jesus Christ, the Prince of Ethics." *Id.* at 870.

The third display presented a closer question for the Court. Rather than focusing solely on the physical context of the display, the Court relied primarily on the history of the counties' displays. *See id.* at 871-72. The Court did not credit the counties' newly proffered secular reasons as they "were presented only as a litigation position there being no further authorizing action" by the counties. *Id.* at 871. Instead, the Court noted that the counties had not repealed or repudiated the earlier religious resolutions. *Id.* at 872. The Court also found that the collection of documents in the third display did not "suggest a clear theme that might prevail over evidence of the continuing religious object." *Id.* The Court, however, made clear that it was not holding "that a sacred text can never be integrated constitutionally into a governmental display on the subject of law, or American history." *Id.*

**B**

In *Van Orden*, the Supreme Court dealt with a different Ten Commandments display. Rather than a recently erected display with a history evidencing a religious purpose, *Van Orden* involved a large monument on the grounds of the state capitol donated by the Fraternal Order of Eagles in 1961 "to highlight the Commandments' role in shaping civic morality." 545 U.S. at 701 (Breyer, J., concurring). The Eagles paid the cost of erecting the monument. *Id.* at 682. Forty years passed before the monument was challenged. *Id.*

---

[5]In *Van Orden*, five justices stated that *Stone* "stands as an example of the fact that we have been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." 545 U.S. at 690-91 (plurality opinion) (internal quotation marks omitted); 545 U.S. at 703 (Breyer, J., concurring).

The Court did not apply the *Lemon* test.  A plurality found that test was "not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds."  *Id.* at 686.  Observing that the Ten Commandments have religious significance, the plurality noted that the Ten Commandments also have "undeniable historical meaning" and that such displays are common throughout America. *Id.* at 688, 690.  "Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause."  *Id.*  The plurality concluded, based on the context, that the Ten Commandments monument did not violate the Establishment Clause.  *Id.* at 691-92.

Justice Breyer provided the fifth vote.  *Id.* at 698.  He noted that "the Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious."  *Id.* at 699.  Like the plurality, Justice Breyer did not apply the *Lemon* test.  *Id.* at 700.  Instead, he looked to the context of the display and found that "the circumstances surrounding the display's placement . . . suggest that the State itself intended the . . . nonreligious aspects of the tablets' message to predominate." *Id.* at 701.  Justice Breyer emphasized that the monument was donated by a civic organization and that the monument itself noted that it was donated by the Eagles. *Id.* at 701-02.  Justice Breyer also found the setting of the monument indicated a secular purpose.  Specifically, he noted that it was placed with many other monuments that indicated a historical and moral context and that the setting did "not readily lend itself to meditation or any other religious activity."  *Id.* at 702.  Finally, he emphasized that forty years had passed, during which time the monument had not been challenged. *Id.* at 702.

## C

Shortly after *McCreary County* and *Van Orden* were decided, this Circuit in *Mercer County v. ACLU*, 432 F.3d 624 (6th Cir. 2005), applied their teachings to a courthouse display identical to this one. As the salient facts in *Mercer County* are nearly identical to those presented in this case, *Mercer County* is highly instructive, if not controlling.  In *Mercer County*, as here, a private citizen requested permission to hang

a Foundations Display in the county courthouse. *Id.* at 626. The county Fiscal Court approved the display and, again as in this case, a private citizen paid for and hung the display in the courthouse. *Id.* The ACLU sought a preliminary injunction, which the district court denied. *Id.* at 627. The County moved for summary judgment and included an affidavit from the Judge Executive that indicated the Fiscal Court had a secular purpose in posting the display, i.e., recognizing the historical role the documents played in the formation of our system of law and government. *Id.*

On appeal, the Sixth Circuit held the Foundations Display did not violate the Establishment Clause under the analysis set forth in *McCreary County*. *Id.* at 631-35. While the *Mercer County* display itself, like the instant display, was ostensibly "identical in all material respects" to the third display in *McCreary County*, *id.* at 631, the Sixth Circuit held that the absence of a *history* of religious purpose like that which preceded and tainted the third display in *McCreary County* was a material difference. *Id.* at 632. The Sixth Circuit noted that a private citizen had hung the display; that there was no public ceremony accompanying the display; that the Judge Executive's affidavit explained the facially legitimate secular purpose—a purpose that was explicitly confirmed by the "context, including the explanatory document and the eight other objectively historical and secular documents;" and that the challengers of the display had produced no evidence that the stated purpose was a sham. *Id.*

The Sixth Circuit then turned to the "effect" prong of the *Lemon* test and held that the Foundations Display did not have the effect of endorsing religion because the Ten Commandments were placed in the context of the other secular documents and there was no history of past attempts to promote a religious message. *Id.* at 637-38. Considering the Ten Commandments in conjunction with "unquestioned civil, legal, and political influence" of the other documents was deemed to accentuate the historical rather than the religious significance of the Commandments. *Id.* Taken as a whole, the display was held to send the "'unmistakable message' of the County's acknowledgment of legal history." *Id.* at 638.

With the guidance provided by these three decisions, we turn to the Foundations Display at issue here.

**V**

We first examine the purpose of the Foundations Display. Purpose is determined from the perspective of an objective observer. *McCreary County*, 545 U.S. at 862. The "objective observer" is credited with knowledge of "readily discoverable fact," including "the traditional external signs that show up in the 'text, legislative history, and implementation of the statute' or comparable official act." *Id.* (quoting *Santa Fe*, 530 U.S. at 308). The evidence of purpose must be external; it cannot involve "any judicial psychoanalysis of a drafter's heart of hearts." *Id.*

"Even if the text and official history of a statute express no secular purpose, the statute should be held to have an improper purpose only if it is beyond purview that endorsement of religion or a religious belief 'was and is the law's reason for existence.'" *Wallace*, 472 U.S. at 75 (O'Connor, J., concurring in the judgment). "Thus, a plaintiff must show that the predominate purpose for a challenged display is religious, although a totally secular purpose is not required." *ACLU v. Ashbrook*, 375 F.3d 484, 491 (6th Cir. 2004). Indeed, if there is no manifest religious purpose for a display, an Establishment Clause complaint should fail, even if "savvy officials had disguised their religious intent so cleverly that the objective observer just missed it." *McCreary County*, 545 U.S. at 863.

**A**

The Grayson County Foundations Display is identical to the third display in *McCreary County* and the display in *Mercer County*. Accordingly, much of the analysis of the purpose in those two decisions applies with equal force to our evaluation of this display. That said, we must be alert to distinguishing facts, as an objective assessment of the purpose behind identical displays may differ based on the different histories of the displays. *McCreary County*, 545 U.S. at 866 n.14.

One of the central concerns in *McCreary County* and *Mercer County* was the history behind the various displays. The Supreme Court examined the history of the third display in *McCreary County* and found that the clear history of a religious purpose—and the absence of any meaningful change in the intention evidenced by that history—demonstrated that the county had a predominantly religious purpose in approving the display. *Id.* at 872; *see also Mercer County*, 432 F.3d at 632-33. In *Mercer County*, there was no such evidence of a religious purpose heritage. *Mercer County*, 432 F.3d at 631. Rather, this court found that "the only history the objective observer would incorporate into this display is the statement of Judge McGinnis that the purpose of the display is to recognize American legal traditions." *Id.* As in *Mercer County*, the approval of the display in Grayson County was not attended by a history evidencing a predominantly religious purpose. There were no earlier displays nor were there any earlier resolutions indicating an avowedly religious purpose.

The other factors considered in *Mercer County* also highlight the absence of evidence of a religious purpose for the Grayson County display. Like the display in *Mercer County*, there was little official involvement in the display. It was proposed, funded, and hung by a private individual. The legitimacy of the County's claimed educational purpose is borne out by the very same explanatory document and other historical documents that supported the asserted secular purpose for the *Mercer County* display. The contents and context of the Grayson County Foundations Display are identical to the contents and context of the display in *Mercer County*, which were held to refute the challengers' assertion of a predominantly religious purpose.

The Plaintiffs in this case, who have the burden of demonstrating that the Foundations Display violates their rights under the Establishment Clause, have failed to present evidence sufficient to demonstrate that an objective observer could have concluded that the County's asserted secular purpose was a sham. In *Mercer County*, in the absence of proof of religious purpose, we deferred to the local government's stated secular purpose, concluding that an objective observer would view the Foundations

Display not as an attempt to establish religion but as an acknowledgment of history.[6] For the same reasons, we here defer to Grayson County's stated secular purpose and hold that the Fiscal Court in Grayson County has not been shown to have had a predominantly religious purpose in approving the Foundations Display.

## B

Despite the congruity of this display with the display in *Mercer County*, the district court concluded that the Grayson County Fiscal Court had a predominantly religious purpose. The district court attempted to distinguish *Mercer County* on four grounds: indications of Shartzer's purpose in proposing the display, references in the record to the Ten Commandments, the first unsuccessful motion to approve the display, and the Fiscal Court's silence as to purpose in approving the display. We hold that these additional considerations do not meaningfully distinguish the Grayson County display from that permitted by the Sixth Circuit in *Mercer County*.

### 1. Shartzer's Purpose

The district court placed a great deal of emphasis on Shartzer's public comments in support of the display. The district court relied on the meeting minutes which noted that Shartzer wanted "the County to place the Ten Commandments in the County buildings" and that Shartzer suggested that "the Civil Liberties would look more favorable toward it if they were hanging in a grouping with the other historical documents."

---

[6]That the Foundations Display "acknowledg[es]" history does not mean that it is necessarily historically accurate. The "Explanation Document" in both *Mercer County* and this case contains a claim that *The Star Spangled Banner* "became a rallying cry for the American Patriots during the Revolutionary War" – a war that had been over for decades before the anthem was written during the War of 1812. More to the point of this case, we acknowledge that there is ongoing academic debate as to the claim that the "Ten Commandments provide the moral backbone of the Declaration of Independence and the foundation of our legal tradition." *See, e.g.*, Steven K. Green, *"Bad History": The Lure of History in Establishment Clause Adjudication*, 81 NOTRE DAME L. REV. 1717, 1746 (2006) ("[R]egardless of the popularity of this belief of a unique status, it lacks historical support. There is no evidence that early political and legal figures saw the Decalogue as singularly (or even significantly) important or influential to American law."); Paul Finkelman, *The Ten Commandments on the Courthouse Lawn and Elsewhere*, 73 FORDHAM L. REV. 1477, 1500-16 (2005) ("[T]he claim that the Ten Commandments . . . are the moral foundation of American law, does not stand up to careful scrutiny.").

As an initial matter, these comments do not on their face evidence what the district court called "purely religious reasons." The minutes do not clearly indicate the reasons why Shartzer wanted to post the Ten Commandments; instead, they simply demonstrate that he wanted them posted. Given that the Supreme Court, this Court, and other circuit courts have held that the Ten Commandments have both religious and secular significance, *see*, *e.g.*, *Van Orden*, 545 U.S. at 690, 701; *Mercer County*, 432 F.3d at 639; *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 798-99 (10th Cir. 2009), the simple desire to post the Ten Commandments cannot, in isolation, demonstrate religious purpose on the part of those desiring the posting. Where Shartzer at the Fiscal Court meetings said more than that he desired to post the Ten Commandments as part of a display of historical documents, moreover, his comments (i.e. regarding road signs for the right ordering of society) spoke to a secular purpose of enhancing civic morality rather than an explicitly religious purpose.

Even more importantly, Shartzer was not the decision-maker who approved the Foundations Display. While courts inquiring into purpose may look to the "public comments of an enactment's sponsor," *see, e.g.*, *McCreary County*, 545 U.S. at 862; *American Civil Liberties Union of Kentucky v. Garrard County, Kentucky*, 517 F. Supp. 2d 925, 342 (E.D. Ky. 2007), ultimately it is the purpose of the government decision-makers that is most important. *See, e.g.*, *Modrovich v. Allegheny County, Pa.*, 385 F.3d 397, 411 (3d Cir. 2004) ("[O]ur focus is on the motivations of the current County officials who have power over the decision."); *Green*, 568 F.3d at 800 n.10 ("focus is on the government actor's conduct rather than the private citizen's."). As the Supreme Court has observed, "the thoughts or sentiments expressed by a government entity that accepts and displays [a privately donated monument] may be quite different from those of either its creator or its donor." *Pleasant Grove City, Utah v. Summum*, 129 S. Ct. 1125, 1136 (2009). Indeed, even when there is evidence of a private individual's religious motivation in promoting a display, the installation of the display will not be deemed to run afoul of the Establishment Clause unless there are "factual findings that would enable this Court to conclude that [government] has endorsed [that individual]'s

particular proselytizing message." *County of Allegheny*, 492 U.S. at 621 n.70 (O'Connor, J., concurring).

This is not to say that the purpose of a private donor is never relevant. In *Van Orden*, Justice Breyer noted that the Fraternal Order of Eagles had donated the monument. Justice Breyer explained that "[t]he tablets, as displayed on the monument, prominently acknowledge that the Eagles donated the display, a factor which, though not sufficient, thereby further distances the State itself from the religious aspect of the Commandments' message." 545 U.S. at 701-02 (Breyer, J., concurring). Similarly, in *County of Allegheny*, the Supreme Court held that a county had a religious purpose in displaying a creche in part because it had "a sign disclosing its ownership by a Roman Catholic organization." 492 U.S. at 600. The Court held that "the sign simply demonstrates that the government is endorsing the religious message of that organization, rather than communicating a message of its own." *Id.* Private purpose thus becomes relevant where there is evidence that the government has adopted the message of the organization donating the display. A sign on the display provides evidence to that effect.

Here, even assuming that Shartzer had a religious purpose, there is no evidence in the record that the Fiscal Court as a body adopted Shartzer's purpose. There was no sign linking the Foundations Display to Shartzer, and there is no record of the Fiscal Court either ascribing a religious purpose to Shartzer's motion or approving of any religious purpose that Fiscal Court members may have believed Shartzer possessed. The minutes simply indicate that members of the Fiscal Court expressed interest in and eventually approved the posting of the Foundations Display. We therefore find the district court erred in relying on Shartzer's purpose to conclude that the Fiscal Court had a predominately religious purpose in accepting the Foundations Display.

## 2. References to the Ten Commandments

The district court also erroneously inferred a religious purpose simply from references to the Ten Commandments as "the Ten Commandments" in the meeting minutes. Religious words and religious descriptions are not forbidden by the Establishment Clause. Indeed, the Fifth Circuit has found that references to avowedly religious acts such as "prayer" do not, by themselves, indicate a religious purpose. *Croft v. Governor of Texas*, 562 F.3d 735, 740-41 (5th Cir. 2009). While some Fiscal Court members at times distinguished the Ten Commandments from the eight other items in the display, which they termed "the Historical Documents" (as in the September 28, 2001 order that the display be posted), simple reference to the Ten Commandments as "the Ten Commandments" cannot, in isolation, prove that a particular speaker, much less the Fiscal Court as a body, had a religious purpose.[7] At most, the comments in the record suggest a desire to post the Ten Commandments among eight other equally-sized historical documents, not the reason *why* the Fiscal Court members wanted the Ten Commandments included. As such, the references to the Ten Commandments, viewed in the light most favorable to the County, do not provide evidence of a predominantly religious purpose.[8]

---

[7]The dissent suggests that references to the Ten Commandments as distinct from the other historical documents indicate that the Ten Commandments were not considered to have historical value, thus warranting an inference that the purpose of the display was not secular, but religious. This unsupported inference is directly refuted by the record. The Explanation Document explicitly identifies the reason for including the Ten Commandments. The Ten Commandments were considered to have "played a significant role in the foundation of our system of law and government" by providing "the moral background of the Declaration of Independence and the foundation of our legal tradition." In the eyes of the objective observer, presumed to have knowledge of the external signs of purpose, including the contents of the display, the Explanation Document represents the best evidence, in this case, of the purpose of the display. Thus, viewing Fiscal Court members' various references to the Ten Commandments in light of the display's explicit statement of purpose, as we must in the shoes of the objective observer, exposes the unreasonableness of the inference urged by the dissent.

[8]The dissent chides us for ignoring "the way in which the Ten Commandments are viewed, particularly by religious leaders such as Reverend Shartzer." Yet, the record is devoid of evidence of how the Ten Commandments are viewed. Moreover, determining how the Ten Commandments, viewed in a vacuum, are perceived – by religious leaders or anyone else – plays no legitimate role in our analysis. Our task, instead, is to determine whether the purpose of the display, viewed from the perspective of the objective observer with knowledge of readily discoverable external facts (e.g., contents, context and approval history), is shown to be predominantly religious. In our opinion, the contents of the display (including the Explanation Document) and the context of the display (displaying the Ten Commandments among eight other equally-sized historical documents in a county courthouse) clearly evidence legitimate secular purposes (i.e., historical and educational), and the approval history is simply ambiguous.

### 3. The First Motion

The district court also relied on the first motion to approve the Foundations Display to support its finding of a predominantly religious purpose. The minutes indicate that Magistrate Hornback made a "motion to place the Ten Commandments in the buildings" and that the motion "died for lack of a second." The district court found that Magistrate Hornback's motion "demonstrates the understanding and true intent of the Fiscal Court members." The motion does nothing of the sort. As discussed above, references to the Ten Commandments are not themselves impermissible. Further, even if the motion to post the Ten Commandments without mention of the other documents were deemed to evidence a religious purpose, it is plainly nonsensical to view a motion by one person—a motion that failed for lack of even a second—as demonstrating that it was the will of the Fiscal Court to approve the motion that failed. Quite to the contrary, the fact that Hornback's motion failed and the later motion to post the entire Foundations Display was approved actually negates the suggestion of a religious purpose and corroborates the Fiscal Court's asserted secular purpose. The failure of this motion is analogous to the evidence of "repeal or repudiation" sought but not found in *McCreary Country*, as the Court disallowed the counties' third display. Indeed, the Fiscal Court's focus on the second motion highlights the care taken by the Fiscal Court to promote its asserted secular purpose without impermissibly endorsing religion. Accordingly, we conclude that the district court erred in inferring a religious purpose from Hornback's motion.

### 4. The Fiscal Court's Silence

Many of the opinions involving the purpose prong of the *Lemon* test involve explicit statements of purpose. Relatively rare is the case in which the record is substantially silent as to the purpose of the government action. The district court considered this to be one of those rare cases. Indeed, apart from the display itself—the contents and context of which we have already concluded, based on the analysis in *Mercer County*, demonstrate a predominantly secular purpose—there is little evidence indicating *why* the Fiscal Court approved the hanging, in the county courthouse, of a

display entitled "Foundations of American Law and Government Display." Ostensibly ignoring the manifest contents and context of the display itself, the district court interpreted this silence to mean that the Fiscal Court never considered a secular purpose. It therefore inferred that the Fiscal Court's original silence on purpose was indicative that its later articulation of a secular purpose was a sham.

The district court's inference of an illicit motive misconceives the nature of the purpose inquiry and the judicial role. The Supreme Court has made clear that courts must proceed with caution in attributing an unconstitutional purpose to a government entity. It has noted its "reluctance to attribute unconstitutional motives to the states, particularly when a plausible secular purpose for the state's program may be discerned from the face of the statute." *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983). Indeed, "a finding of impermissible purpose should be rare." *Mercer County*, 432 F.3d at 630.

One form this reluctance takes is deference to the government's stated reasons. *McCreary County*, 545 U.S. at 864; *Santa Fe Independent Sch. Dist. v. Doe*, 530 U.S. 290, 308 ("When a governmental entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference."). In order for this particular form of deference to apply, the reasons should be clear before litigation begins. The government receives deference if it "expresses a plausible secular purpose . . . in either the text or the legislative history." *Wallace v. Jaffree*, 472 U.S. 38, 74 (1985). In *McCreary County*, the Court dismissed a county's statement of secular purpose after litigation began, noting that "[t]hese new statements of purpose were presented only as a litigating position" and that they were inconsistent with "the extraordinary resolutions . . . passed just months earlier" that indicated a clear religious purpose. 545 U.S. at 871. This does not, of course, preclude a government body from offering reasons after litigation begins. *See, e.g.*, *King v. Richmond County, Ga.*, 331 F.3d 1271, 1277 (11th Cir. 2003). It simply limits the deference those reasons receive.

Indeed, though the County would be entitled to less deference for reasons asserted only during litigation that are inconsistent with its pre-litigation position, the

County's presently asserted educational purpose is consistent with its pre-litigation position. The historical and educational purpose of the Foundations Display was made manifestly apparent to any objective observer through the contents and context of the display from the date of its initial installation, immediately after the display was approved and weeks before litigation commenced. The County's asserted educational purpose is not inconsistent with the purpose made explicit by the display itself and does not contradict any prior resolutions passed by the Fiscal Court.[9]  *Compare McCreary County*, 545 U.S. at 871. Indeed, we have previously found an identical display sends the "'unmistakable message' of the County's acknowledgment of legal history." *Mercer County*, 432 F.3d at 638. We further found that it "do[es] not have a religious purpose." 432 F.3d at 634 n.7; *see also Books v. Elkhart County*, 401 F.3d 857, 866 (7th Cir. 2005) (finding an essentially identical display did not have a religious purpose). Accordingly, we find the district court erred in finding that the Fiscal Court's articulated purpose was a sham based on inferences drawn from a lack of evidence.

In sum, we find that all four of the district court's attempts to distinguish this case from *Mercer County* were spurious.

## VI

Our inquiry into purpose does not end the matter. We must also analyze the effect prong of the *Lemon* test. This prong requires us to determine whether the "challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *County of Allegheny*, 492 U.S. at 597 (citing *Lynch*, 465 U.S. at 688). Unlike purpose, which "looks to the *intended* effect of the display, our inquiry into whether the display endorses religion examines its *actual* effect." *Adland*, 307 F.3d at 484 (emphasis added). This inquiry, too, uses an objective

---

[9]The dissent insists that the County's asserted secular purpose is not entitled to deference because it is inconsistent with statements made by individual Fiscal Court members before the display was approved. In our opinion, the dissent exaggerates the significance of these rather ambiguous statements and too casually dismisses as "inconsequential" both the contents and context of the display, which are not ambiguous and which represent two of the three external signs of purpose that are to guide our analysis.

standard.  *Mercer County*, 432 F.3d at 636.  We look to "whether an objective observer, acquainted with the text, legislative history, and implementation of the [display], would perceive it as a state endorsement" of religion.  *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 308  (quoting *Wallace*, 472 U.S. at 73 (O'Connor, J., concurring in the judgment)).  "If context, history, and the act itself send the 'unmistakable message' of endorsing religion, then the act is unconstitutional."  *Mercer County*, 432 F.3d at 637.

Context is critical.  *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring in ruling that display of Christian nativity crèche did not communicate message of endorsement of Christian beliefs).  "[A] typical museum setting, though not neutralizing the religious content of a religious painting, negates any message of endorsement of that content." *County of Allegheny*, 492 U.S. at 595.  In *County of Allegheny*, the Court therefore considered where the contested display was placed and what surrounded it.  *Id.* at 598-600.  It also considered the size of the challenged component of a display, an explanatory document placed next to the display, and whether the message of the display was religious when viewed as a whole.  *Id.* at 614-16, 619.

The Grayson County Foundations Display was placed in a low-traffic area on the second floor of the courthouse.  Though it is in a courthouse, it is not in the "main" and "most beautiful part" of the building.   Across from the display is a display honoring veterans that includes two quilts and a photograph.  The display itself contains nine documents having historical meaning and a tenth document that explains the historical relevance of each document.  There is nothing about the setting of the display that would be viewed as encouraging or lending itself to prayer, meditation or other religious activity.  *See Van Orden*, 545 U.S. at 702 (Breyer, J., concurring).

In our analysis of the effect of this Foundations Display, we are again guided by the analysis in *Mercer County*.  In finding that an identical display did not endorse religion, we quoted with approval language from an opinion by the Seventh Circuit where a functionally identical display was addressed:

> [T]he documents are displayed in a way that does not direct an observer
> to focus on any one document. . . . [T]he display includes a framed

explanation of the historic significance of the documents. The content and context of the "Foundations" display, considered as a whole, suggest that the Ten Commandments are included not for their singular religious import (that is, as a statement of religious imperatives) but, rather, for their historical contribution to the development of American legal and political traditions.

By virtue of the texts that are included and the content of the accompanying explanation, this display tells viewers that the American founders were inspired by a religious tradition that includes the Ten Commandments and that those values influenced the development of our law and government. A public acknowledgment by the government that the founders were religious people whose faith influenced the creation of this nation, its laws, and its institutions of government is far different from saying that the government itself endorses their religion. Only the latter message is prohibited by the Establishment Clause.

*Books*, 401 F.3d at 868. We found this analysis persuasive in *Mercer County*, 432 F.3d at 637, and we find no reason in the record to depart from it in this case.

The district court acknowledged that *Mercer County* was directly on point with regard to the effect prong, but held that the distinguishing circumstances discussed above—Shartzer's purpose in proposing the Foundations Display, the references to the Ten Commandments in the minutes, and the initial motion to post the Ten Commandments–also demonstrated that the Foundations Display had the effect, in the eyes of the objective observer, of endorsing religion. For the reasons fully discussed above, we conclude the district court clearly erred in its assessment of those circumstances.[10]

While there is no doubt that the Fiscal Court members could have been more explicit about their educational goals, we nonetheless find that, taken as a whole, the Foundations Display endorses an educational message rather than a religious one. *See Mercer County*, 432 F.3d at 638.

---

[10]We acknowledge that the purpose of a private sponsor can be more relevant to the inquiry under the effect prong of the *Lemon* test than under the purpose prong. *Green*, 568 F.3d at 800 n.10. This was so in *Green* because the private speaker had expressed his "unalloyed religious motivation" in promoting a Ten Commandments monument and the county board "in short order agreed to allow him to erect it." *Id.* Here, in contrast, even if Shartzer had such an unalloyed religious motive, the record available to us does not indicate that Shartzer expressed or that the Fiscal Court approved such a purpose.

**VII**

The Establishment Clause is not intended to prevent any mention of religion by government entities. "Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Van Orden*, 545 U.S. at 690 (plurality opinion). "[T]he Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious." *Id.* at 699 (Breyer, J., concurring). The Establishment Clause thus permits government displays to include religious influences as they honor other elements of our country's legal and political history. The courts are obliged to ensure that, in approving and adopting such displays, government actors do not abandon the neutrality principle enshrined in the Establishment Clause. In doing so, we look for evidence that the government acted with a predominantly religious purpose, that the display itself has the effect of impermissibly endorsing religion, or that the government's actions lead to an excessive entanglement of government and religion. Here, the evidence in the record does not demonstrate that Grayson County acted with an impermissible purpose or that the inclusion of the Ten Commandments in the Foundations Display has the impermissible effect of endorsing religion. Plaintiffs have not carried their burden of overcoming the deference to which the legislative judgment of a subdivision of state government is ordinarily entitled.

Our dissenting colleague would reach a different conclusion. We respectfully submit the dissent's analysis is based not on the finding of persuasive external evidence that the Fiscal Court acted with a predominantly religious purpose. Rather, it is based on an inference, drawn from both the perceived dearth of external evidence of a clearly identified secular purpose and a suspicion that the secular purpose articulated by Grayson County during litigation is a sham. The inference is that the inclusion of the Ten Commandments, a document bearing undeniable (albeit ill-defined) religious significance, in an otherwise acceptable historical display, necessarily signifies a tacit, predominantly religious purpose.

In our view, this inference is not only unwarranted by the cognizable record, but is improperly drawn in derogation of the traditional deference accorded to a state governmental entity.  With reference to "the way in which the Ten Commandments are viewed," the dissent appears to treat the inherent religious nature of the Ten Commandments as necessarily "trumping" their recognized secular and historical significance.  As a consequence, the dissent, in effect, improperly transfers the burden of proof from challenger to the governmental entity, too casually dismisses manifest evidence of secular purpose as a sham, and indulges in speculation about Fiscal Court members' "heart of hearts," contrary to *McCreary County*, 545 U.S. at 862.

The dissent's conclusion that the Fiscal Court members's true purpose was predominantly religious may or may not be erroneous; it is simply not supported by the record evidence on which the judicial assessment – of *what the objective observer* would have understood the purpose behind to display to be – must be made.  Indeed, there may be good reason to believe that religious purpose underlies many of the attempts in recent years to place copies of the Ten Commandments in public buildings.  Nonetheless, while "the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective," *McCreary County*, 545 U.S. at 871, it is those objecting to a display of the Ten Commandments who bear the burden of producing evidence sufficient to *prove* that the governmental entity's secular purpose is a sham, and that an objective observer would understand the display to be motivated predominately by religion.  Plaintiffs have not carried their burden in this case.

## VIII

Following the precedent set out by the Supreme Court's decisions in *McCreary County* and *Van Orden*, as well as by our own previous decision in *Mercer County*, we hold that the Grayson County Foundations of American Law and Government Display (with Ten Commandments) does not infringe plaintiffs' rights under the Establishment Clause.  We **REVERSE** the judgment of the district court, **VACATE** its permanent injunction, and **REMAND** the case for entry of **JUDGMENT** in favor of Grayson County.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  Government action violates the Establishment Clause if (1) "the government acts with the ostensible and predominant purpose of advancing religion," *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005); (2) the action "has the purpose or effect of endorsing religion"; *or* (3) the action "foster[s] an excessive governmental entanglement with religion,"[1] *ACLU v. Mercer County*, 432 F.3d 624, 635 (6th Cir. 2005).  Although the majority purports to apply this test, its application is misguided at best.  Because I conclude that the record evidence in this case, viewed in the light most favorable to the defendant, establishes that the County had a predominantly religious purpose in hanging the Foundations Display ("Display") and that the Display had the purpose or effect of endorsing religion, I dissent.

## I.  ANALYSIS

### A.  The Display's Predominant Purpose is to Advance Religion

"[P]urpose matters."  *McCreary County*, 545 U.S. at 866 n.14.  "The eyes that look to purpose" behind government action, "belong to an 'objective observer,'" *id*. at 862, a person who is "presumed to be aware of the text, legislative history, and implementation of the state action."  *Mercer County*, 432 F.3d at 630 (quotation omitted).  Further, "although a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective."  *McCreary County*, 545 U.S. at 864.  If a defendant espouses a purpose in response to litigation, and such purpose contradicts the record evidence, the newly stated purpose may be rejected.  *See id*. at 871 (rejecting the defendants' "new statements of purpose[, which] were presented only as a litigating position," because

---

[1]Although recently reformulated, *see Mercer County*, 432 F.3d at 635, this test was originally enunciated in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), and I will thus refer to this standard as the *Lemon* test.

these statements contradicted the defendants' pre-litigation religious purpose); *cf. Mercer County*, 432 F.3d at 631-32 (noting that this court will not "defer to the government's stated purpose . . . 'where the claim was an apparent sham'" (quoting *McCreary County*, 545 U.S. at 865)).

The County's asserted purpose here—that the Display was posted for educational or historical reasons—is a sham and should be rejected. The minutes from the September 18, 2001 Grayson County Fiscal Court ("Fiscal Court") meeting, which constitute the type of "legislative history" of which an objective observer would be aware, reveal the following: (1) Reverend Shartzer, a religious leader, approached the Fiscal Court and asked "the County *to place the Ten Commandments* in the County buildings"; (2) Reverend Shartzer stated that "the Civil Liberties [sic] would look more favorable [sic] toward [hanging the Ten Commandments] if they were hanging in a grouping with the other historical documents"; (3) "Judge Logsdon and the Court members expressed the desire to place them[, the Ten Commandments,] in the County buildings and asked the County Attorney if he thought they could do so in a way that would not cause problems for the County"; (4) Magistrate "Damon Hornback made a motion *to place the Ten Commandments* in the buildings," which "died for lack of a second"; and (5) immediately thereafter Magistrate Sandy Farris made another motion, which Damon Hornback seconded and which passed by a unanimous vote, that ordered "[t]he County place *the Ten Commandments* in the Court House along with the Historical documents." Record on Appeal ("ROA") at 417 (09/18/01 Meeting Minutes) (emphasis added). On September 28, 2001, the Fiscal Court reaffirmed the September 18 vote that had already approved the Display, ordering that "[t]he following resolution along with the Historical Documents and *the Ten Commandments* be placed in a grouping in the Court House." ROA at 419 (09/28/01 Meeting Minutes) (emphasis added). The vote at this second meeting followed an extensive commentary by Reverend Shartzer about the need for the Display, but the Fiscal Court failed to record the content of the exchange and there is little record evidence concerning what Reverend Shartzer said other than his recollection.

Although the Supreme Court has noted that the Ten Commandments have some historical value, *see Mercer County*, 432 F.3d at 634, an objective observer reviewing these minutes and their context in the light most favorable to the County would rightly conclude that the Fiscal Court's predominant purpose in erecting the Display was not secular. The evidence from these meetings clearly indicates that the predominant purpose was to post the Ten Commandments as a religious text and that the additional, "Historical Documents" were added merely to avoid violating the Constitution. Most notably, throughout the Fiscal Court's discussion of whether to erect a display, the Ten Commandments were always treated as separate from and more important than any of the "Historical Documents" mentioned. Reverend Shartzer, a religious leader, specifically asked the Fiscal Court to display the Ten Commandments. Magistrates Hornback and Farris, both government officials, singled out the Ten Commandments as their primary focus when making their respective motions to place the Display in the courthouse and clearly considered the "Historical Documents" as distinct from the Ten Commandments. Indeed, the actual orders that the Fiscal Court passed on September 18 and September 28 both focused on hanging the Ten Commandments and explicitly distinguished them from the "Historical Documents," which were mentioned in passing and only as a way to attempt to avoid constitutional problems.

In addition to treating the Ten Commandments and the "Historical Documents" as conceptually distinct, the Fiscal Court never mentioned at the first meeting when it voted to approve the Display that the Display would be educational or showcase America's legal history. To the contrary, in fact, the Fiscal Court continually treated the Ten Commandments as separate from the "Historical Documents," indicating that the Fiscal Court did not attribute to the Ten Commandments whatever historical value those other documents held. Moreover, at no point after the Fiscal Court's first meeting's vote did the Fiscal Court pass a resolution stating or clarifying that the purpose of the Display

was educational, historical, or otherwise secular. Instead, the Fiscal Court members began mentioning the secular aspects of the Display only after litigation commenced.[2]

The majority insists that this evidence is insufficient for the plaintiffs to show that the County had a predominantly religious purpose in erecting the Display because "the simple desire to post the Ten Commandments cannot, in isolation, demonstrate religious purpose." Maj. Op. at 18. This observation ignores the way in which the Ten Commandments are viewed, particularly by religious leaders such as Reverend Shartzer, and the explicit and vocal manner in which the Fiscal Court treated them. Regardless of any historical value attributable to the Ten Commandments, it is undeniable that the Ten Commandments comprise a religious document. *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 690 (2005) (plurality) ("Of course, the Ten Commandments are religious—they were so viewed at their inception and so remain."). Given this reality, even though a government entity can post the Ten Commandments for educational or historical purposes and not run afoul of the Constitution, that does not mean that a desire to post the Ten Commandments in a constitutionally permissible manner cannot also evidence a predominantly religious purpose for the display in the eyes of an objective observer. When a government entity speaks only and continually about posting a religious document, treats the religious document as separate and distinct from the history-related documents, and focuses principally on ensuring that the religious document is posted in a way that does not upset "the Civil Liberties," an objective observer would rightly conclude that the predominant purpose behind hanging the religious document was to support and spread the religious message. Under such circumstances, the desire to post the religious document establishes the predominant purpose, even if the government entity never bluntly states that purpose as its rationale.[3]

---

[2]The majority inexplicably ignores the Fiscal Court's statements in concluding that "even assuming that Shartzer had a religious purpose, there is no evidence in the record that the Fiscal Court as a body adopted Shartzer's purpose," Maj. Op. at 17, and imagines silence where there was none.

[3]By acknowledging the religious underpinnings of the Ten Commandments and the religious manner in which the document is perceived, I do not, as the majority claims, treat the "inherent religious nature of the Ten Commandments as necessarily 'trumping' their recognized secular and historical significance." Maj. Op. at 25. Rather, I analyze the Fiscal Court's actions in context, and refuse to ignore the fact that the Ten Commandments comprise a religious text and that the document's religious significance becomes even more pronounced when it is a religious leader who proposes that they be hung.

As a result, I believe that the plaintiffs have met their burden to show an Establishment Clause violation: The predominant purpose at the time the Fiscal Court voted to approve the Display was a religious one.[4]

This conclusion would not forbid government entities from specifically discussing the Ten Commandments or any other religious document or item, as the majority implies. If a government entity proposed posting the Ten Commandments for historical or educational purposes and, in the course of that discussion, referred specifically to the Ten Commandments, that reference would not necessarily evidence a religious purpose. In such a case, the record may well establish that, although the government expressly referenced the Ten Commandments, it did so only as a way to explain the type of display it envisioned and that, in light of the references to the historical and educational import of the display and the Ten Commandments' role therein, the predominant purpose was secular. No such record evidence exists in the instant case, however. The Fiscal Court here espoused no purpose other than a desire to post a religious document, and it is the Fiscal Court's singular focus on posting the Ten Commandments for a sectarian reason that establishes a religious purpose.

To further support its conclusion that the Fiscal Court had a secular purpose in hanging the Display, the majority relies on Reverend Shartzer's deposition testimony analogizing the display to "road signs." Maj. Op. at 16. This reliance is misplaced. Even assuming that Reverend Shartzer's testimony correctly summarizes his statements

---

Again, as the Supreme Court has noted, "Of course, the Ten Commandments are religious—they were so viewed at their inception and so remain." *Van Orden*, 545 U.S. at 690. To fail to recognize this fact would be as egregious as failing to acknowledge that the Ten Commandments can be viewed secularly, which I do not purport to do.

[4] The majority's treatment of Magistrate Hornback's first failed motion to place the Ten Commandments in the courthouse as analogous to "evidence of 'repeal or repudiation'" that "negates the suggestion of a religious purpose" and "highlights the care taken by the Fiscal Court to promote its asserted secular purpose," Maj. Op. at 19, is unconvincing. Instead, in light of the Fiscal Court's conversation concerning the legal challenges mounted against Ten Commandments displays that immediately preceded the failed motion, the failed motion reflects nothing more than an awareness of the potential legal ramifications of posting the Ten Commandments in isolation. Furthermore, in order to "negate the suggestion of a religious purpose," the actions the Fiscal Court took after that motion must be in accordance with a secular purpose. They were not. As highlighted above, the second vote still evidenced that the Fiscal Court's purpose was to hang the Ten Commandments for its religious value because the Fiscal Court continued to treat the religious text as separate from the historical texts, which it desired to hang only as an attempt to insulate the Ten Commandments from legal challenge.

during the second Fiscal Court meeting, as we must, this testimony cannot support a finding of secular purpose. As Reverend Shartzer admitted in his deposition, he did not make his statements regarding "road signs" until the second meeting, which occurred *after* the Fiscal Court originally approved the Display. There is no evidence that the Fiscal Court voted to reapprove the Display because it had developed a new purpose sometime between September 18 and September 28; to the contrary, the vote during the second meeting was a response to the county attorney's recommendation regarding the constitutionality of the Display. *See* ROA at 417 (09/18/01 Meeting Minutes) (noting that the Fiscal Court ordered that "[t]he County place the Ten Commandments in the Court House along with the Historical documents of the Declaration of Independence, Bill of Rights, Mayflower Compact, Star Spangled Banner, National Anthem, Magna Carta, Explanation Document, and a County Resolution, *after County Attorney Tom Goff has looked at the results of the hearings in other Counties, and if he thinks this can be done without legal action against the County*." (emphasis added)). The Fiscal Court's purpose in erecting the Display was already established at the time Reverend Shartzer made his statements, and the majority cannot now use these statements to reinterpret the Fiscal Court's initial purpose.

I also do not believe that the Explanation Document posted with the Display "represents the best evidence" of the Display's purpose simply because the Explanation Document allegedly identifies the Display's purpose. Maj. Op. at 18 n.7. And to reach this conclusion, I do not ignore the presence of the Explanation Document as the majority contends. *See id.* Rather, while it is true that the Explanation Document states that the Ten Commandments have "influenced the formation of Western legal thought" and "provide the . . . foundation of our legal tradition," ROA at 420 (Explanation Doc.), the mere inclusion of the Explanation Document does not, in this case, establish the Fiscal Court's primary purpose or automatically insulate its actions. Importantly, the Fiscal Court neither drafted nor approved the content of the Explanation Document. In fact, several Fiscal Court members testified that they had not seen, let alone read, the document prior to its posting. Reverend Shartzer also testified that even he had not seen the Explanation Document prior to the Fiscal Court meeting where the Display was

approved because the Document was provided to him later by another pastor in response to Reverend Shartzer's inquiry about "what needed to be in the display" to avoid constitutional problems. ROA at 379-81 (Shartzer Dep.).

Moreover, as outlined previously, at no time during the Fiscal Court's discussion of the Display did any member indicate that he or she was authorizing the Display for reasons even remotely related to those contained within the Explanation Document. Given this reality, the Explanation Document's inclusion in the Display is as inconsequential as the presence of the various "Historical Documents" in establishing the Fiscal Court's primary purpose. It simply cannot overcome the Fiscal Court's explicit statements. Even viewing the Explanation Document in the light most favorable to the County, it is nothing more than an post-hoc attempt to obfuscate the true, religious purpose. In short, at the time the Fiscal Court voted to approve the Display, the ostensible purpose contained within the yet-to-be-seen Explanation Document was not the Fiscal Court's own purpose. Based on the Fiscal Court's actual statements at the time it approved the Display, an objective observer would still conclude that the Fiscal Court's purpose was predominantly religious, even "in light of the display's explicit statement." Maj. Op. at 18 n.7. Certainly the contents and context of the Display evidence some secular *principles*, but in light of the Display's legislative history, which expresses religious preference, they do not evidence secular *purpose*.

Contrary to the majority's claim, then, *Mercer County* is vastly different from the instant appeal. And even though a panel of this court "deferred to the local government's stated secular purpose" in *Mercer County*, Maj. Op. at 15, I believe that we cannot do so here. It made sense for the *Mercer County* panel to defer to the County's stated secular purpose there because there was no evidence to the contrary. *Mercer County*, 432 F.3d at 632 ("Mercer County's stated purpose was more than a mere 'litigating position'" because "there is no evidence in this case that the County's stated purpose is a sham."). That is not so with Grayson County. Here, there *is* evidence in the form of meeting minutes that the predominant purpose of this Display was not the educational or historical purpose now espoused or reflected in the Explanation

Document. Instead, the secular rationale upon which the majority focuses embodies the type of "litigating position" that the Supreme Court condemned in *McCreary County*. *See McCreary County*, 545 U.S. at 871. And the secular purpose directly contradicts the clear religious purpose evidenced by the Fiscal Court's explicit statements in the meeting minutes and the tenor of the meetings. All of the record evidence supports a finding that the government entity had a predominantly religious purpose in erecting the Display and that any other purpose is a sham. Such a conclusion does not require reliance on erroneous inferences or suspicions gleaned from silence. The record evidence speaks loudly and requires neither.

It is true that, in terms of content and position within the courthouse, the Display at issue in the instant appeal is identical to the display that the *Mercer County* panel found constitutional. But, contrary to the majority's assertions, that is where the similarities end. The majority is wrong to assert that *Mercer County* is dispositive—the display in *Mercer County* had a materially different legislative history than the Display at issue in this case. Unlike *Mercer County*, all of the evidence of legislative history in this case supports a finding that the Fiscal Court acted with a predominantly religious purpose and went to great lengths to hide that purpose by figuring out what it needed to hang in addition to the Ten Commandments in order to avoid a constitutional challenge. To defer to the Fiscal Court's newly stated secular purpose ignores the statements the Fiscal Court made when it voted to approve the Display and adopts as legitimate what the Fiscal Court now feels it needs to say in order to avoid running afoul of the law.

Because the Display here "has a history [of] manifesting sectarian purpose that the [Mercer County display] lack[ed], it is appropriate that they be treated differently." *Mercer County*, 432 F.3d at 632 (quoting *McCreary County*, 545 U.S. at 866 n.14) (first alteration in original). Given the legislative-history evidence of religious purpose, I believe that this case is more analogous to *McCreary County*. Accordingly, under the Supreme Court's rule in *McCreary County*, I would hold that the Display violates the first prong of the *Lemon* test and, therefore, violates the Establishment Clause.

**B.  The Display Endorses Religion**

The Display also fails the second prong of the *Lemon* test.  Government action violates this prong when the action would cause a reasonable person to view the act as endorsing religion.  *Mercer County*, 432 F.3d at 636.  This is an objective standard that, similar to the objective-observer standard outlined above, requires a court to consider the perspective of a "reasonable person [who] is deemed aware of the circumstances under which governmental actions arise, including the legislative history and implementation."  *Id*.  Moreover, "[c]ontext is crucial to this analysis."  *Id.*  "If context, history, and the act itself send the 'unmistakable message' of endorsing religion, then the act is unconstitutional."  *Id*. at 637 (quoting *County of Allegheny v. ACLU*, 492 U.S. 573, 600 (1989) (plurality opinion)).

In upholding a display identical to the Display at issue here, the *Mercer County* panel noted that this court "will not presume endorsement from the mere display of the Ten Commandments."  *Id*. at 639.  The panel further noted that the display was constitutional because, on its face, it "sen[t] the 'unmistakable message' of the County's acknowledgment of legal history," and that "*nothing in the legislative history tend[ed] to show otherwise*."  *Id.* at 638 (emphasis added).  In this case, unlike *Mercer County*, there *is* evidence tending to show that the defendants were, in fact, endorsing religion. As outlined at length above, the Fiscal Court meeting minutes reflect the desire to post the Ten Commandments for its religious value, as opposed to erecting an educational or historical display.  Although a reviewing court cannot presume endorsement from the simple fact that the Ten Commandments were included in the ultimate Display, *id.* at 639, such a presumption is unnecessary here given that the meeting minutes demonstrate the Fiscal Court's primary focus was to post a religious text for its religious value. Unlike the historical message sent in *Mercer County*, the posting of an unquestionably religious document under the circumstances in the instant case sent an "unmistakable message" of endorsing religion that would lead the reasonable person to conclude that the Display and the government behind it endorse religion.  *See id.* at 638.  Thus, I would

hold that the Display violates the second prong of the *Lemon* test as well as the first. Each violation constitutes a violation of the Establishment Clause.

## II. CONCLUSION

The record clearly demonstrates that the County erected the Display with a predominantly religious purpose and that the Display has the purpose or effect of endorsing religion. Accordingly, I would **AFFIRM** the district court's grant of summary judgment in favor of the plaintiffs. However, because the majority has seen fit to imagine that a clear intent to post a religious document only for its religious value does not evidence a predominantly religious purpose, I must dissent.