*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0128P (6th Cir.)
File Name: 00a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TRUSTEES OF THE MICHIGAN
LABORERS' HEALTH CARE
FUND; MICHIGAN LABORERS'
DISTRICT COUNCIL PENSION
FUND; MICHIGAN LABORERS'
VACATION FUND; MICHIGAN
LABORERS' TRAINING FUND;
CONSTRUCTION INDUSTRY
ADVANCEMENT FUND,
         *Plaintiffs-Appellants,*

            *v.*

MICHAEL GIBBONS; WILLIAM
GIBBONS; GIBBONS
BROTHERS MASONRY,
         *Defendants-Appellees.*

No. 98-1975

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-71315—Bernard A. Friedman, District Judge.

Argued: November 5, 1999

Decided and Filed: April 7, 2000

Before:  MARTIN, Chief Judge; DAUGHTREY, Circuit Judge; KATZ,[*] District Judge.

_____

**COUNSEL**

_____

**ARGUED:**  Christopher P. Legghio, MARTENS, ICE, GEARY, KLASS, LEGGHIO, ISRAEL & GORCHOW, Southfield, Michigan, for Appellants.  Michael J. Olson, KIZER LAW FIRM, Howell, Michigan, for Appellees. **ON BRIEF:**  Kenneth J. Fiott, CAMERON MILLER & ASSOCIATES, Plymouth, Michigan, for Appellants. Thomas J. Kizer, KIZER LAW FIRM, Howell, Michigan, for Appellees.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The plaintiffs here are trustees of various employment benefit funds established by collective bargaining agreements between construction-industry employer associations and unions representing their employees.  They filed suit pursuant to § 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145 (1994), against the defendants, Michael Gibbons, William Gibbons, and Gibbons Brothers Masonry, seeking recovery of unpaid contributions and other equitable relief.  Following cross-motions for summary judgment, the district court denied the plaintiffs' motion and granted summary judgment to the defendants, finding that the plaintiffs were equitably estopped from recovering fringe benefits under the circumstances of this case.  The plaintiffs appeal, assigning as error only the grant

_____

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

defendants' ERISA liability, to order the defendants to permit the requested audit of their books, and to further determine those monies due to the Trustees.

is not a case in which the parties have not had a chance to dispute facts material to the plaintiffs' claim, *see Fountain v. Filson*, 336 U.S. 681, 683 (1949); indeed, the defendants acknowledged in their motion for summary judgment that no genuine issue of material fact existed. The undisputed facts show that the defendants have failed to make contributions to the trust funds in question according to the terms of valid collective bargaining agreements, in so doing violating § 515 of ERISA. We have examined the record below and find no merit to any of the defendants' asserted legal defenses to their duties under the agreements. We therefore remand this case to the district court to order partial summary judgment to the Trustees, oversee the audit of the defendants' record, and determine what award of unpaid contributions and other damages, if any, is due to the Trustees acting on behalf of the ERISA funds.

### CONCLUSION

In this case the defendants, engaged in the construction industry for at least the last 15 years, claim ignorance of their obligations to ERISA trust funds and seek to estop plaintiffs from enforcing these obligations. As a matter of policy, we think that equitable estoppel of third party enforcement of collective bargaining agreements governed by ERISA may well conflict with Congress's objectives in enacting ERISA, *i.e.*, that establishment of employee benefits funds by such plans be in writing and that the funds' fiscal health remain secure. Even if estoppel should be available to defendant employers in some cases, in order for *these* defendants to estop the plaintiffs from enforcing the collective bargaining agreements at issue here, *all* the elements of this circuit's common law test must have been established. We conclude that, as a matter of law, the defendants cannot establish all the elements of equitable estoppel on these facts. Because the district court erred in ruling that the defendants made such a showing, we hold that the district court's judgment must be **REVERSED**. We direct the district court on remand to enter partial summary judgment for the Trustees as to the

of summary judgment to the defendants. Because we conclude that the district court erred in its application of the five-part test developed by this court in *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210 (6th Cir. 1987), and reiterated in *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991), we find it necessary to reverse the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendants Michael and William Gibbons, doing business as Gibbons Brothers Masonry, are contractors in the construction industry. Between 1986 and 1990, the defendants entered into collective bargaining agreements with various local chapters of the State of Michigan Laborers' District Council of the Laborers' International Union of North America. The agreements required the defendants to contribute specific sums of money to several employee pension and welfare benefit funds governed by ERISA. These funds, the trustees of which are plaintiffs here, included the Michigan Laborers' Health Care Fund; the Michigan Laborers' District Council Pension Fund; the Michigan Laborers' Vacation Fund; the Michigan Laborers' Training Fund; and the Construction Industry Advancement Fund. Each agreement also included an "evergreen" clause, automatically renewing the agreement each year unless a party to the agreement submitted written notice of intent to terminate or amend at least 60 days before the agreement's expiration date.

In 1990, an audit of the defendants' payroll records indicated that the defendants owed thousands of dollars in unpaid contributions to the Funds. After protracted negotiations over payment of these monies failed, in 1991 plaintiffs filed a lawsuit under ERISA's civil enforcement

provisions to recover the unpaid amount.[1]  The district court entered a default judgment against the defendants for approximately $70,000, covering the plaintiffs' claims through September 1990.  The defendants' business and personal bank accounts were garnished to satisfy the judgment.

After the 1991 judgments, the defendants made no further payments into the Funds.  In 1994, an auditor for the Funds, Dawn Aldrich, contacted the defendants by mail and by phone requesting access to payroll records in order to perform another audit.  At that time defendant William Gibbons informed Aldrich of his belief that the 1991 judgment terminated the collective bargaining agreements.  Aldrich, whose office had received no report confirming that the agreements had been terminated, told Gibbons that she "was sure that he had agreements" with the union requiring continued payments into the Funds.

Both Aldrich and Gibbons expressed an intent to check their files to ascertain the status of the agreements.  Nevertheless, no contact occurred between the parties until September 1996, when Aldrich again attempted to schedule an audit with the defendants.  They refused to permit the audit, and the trustees filed another complaint, this time seeking an order to compel the audit and to enforce the defendants' obligations to make contributions to the Funds.

---

[1]Section 515 of ERISA states:
Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
29 U.S.C. § 1145 (1994).  ERISA requires courts to award parties victorious in actions pursuant to § 515 unpaid contributions and accrued interest, liquidated damages, attorneys' fees and costs, and "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g).

silence by a party who claims not to have known where defendant was or whether or not defendant was infringing").

We hold that the district court erred in concluding that the Trustees should be estopped from enforcing the agreements for either the period between the 1991 judgment and the 1994 Aldrich-Gibbons communications or the period since those communications, and that the order incorporating this estoppel must be reversed.  We note that the Trustees do not appeal the district court's denial of their summary judgment motion; nevertheless, after careful review of the record, we believe a grant of summary judgment as to the defendants' ERISA liability is appropriate now.  We have jurisdiction to review the court's denial of summary judgment, often not appealable as an interlocutory decision, because it has merged into the final judgment in the case.  *See*, *e.g.*, *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).  We have the discretion to so direct an alternative order of judgment pursuant to 28 U.S.C. § 2106, which allow federal appeals courts to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review," and to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."[5]  Our direction to the district court to order summary judgment is appropriate here because this

---

[5]We have not hesitated in the past to assert this power when appropriate by directing an order of summary judgment to a party appealing the grant of the same to an adversary, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 366 (6th Cir. 1993), and now join those appellate courts that have done so even where the losing party below did not argue on appeal for a grant of summary judgment.  *See*, *e.g.*, *Fabric v. Provident Life & Accident Ins. Co.*, 115 F.3d 908, 914-915 (11th Cir. 1997); *O'Neill v. Continental Airlines, Inc.* (*In re* Continental Airlines), 981 F.2d 1450, 1458-59 (5th Cir. 1993); *Dickeson v. Quarberg*, 844 F.2d 1435, 1444 n.8 (10th Cir. 1988); *Martinez v. United States*, 669 F.2d 568, 570 (9th Cir. 1982); *Morgan Guaranty Trust Co. v. Martin*, 466 F.2d 593, 600 (7th Cir. 1972); *First Nat'l Bank v. Maryland Cas. Co.*, 290 F.2d 246, 251-52 (2d Cir. 1961).

*348*, 749 F.2d at 319; *see also Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir.) (en banc), *cert. denied*, 118 S.Ct. 2312 (1998) ("[R]eliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party."). Similarly, the defendants here either were or should have been aware of their obligations under the written agreements, if by no other means than the first, successful recovery action against them. They cannot claim justifiable reliance on the equivocal statements and ensuing delay of an auditor in attempting to escape their responsibilities now.

The lack of soundness in the district court's estoppel analysis is epitomized by its holding that the plaintiffs should be estopped from enforcing the agreements from the time of the 1991 judgment onward. Even if Aldrich's conduct could be said to estop plaintiffs from enforcing the agreements *after* Aldrich's communications with William Gibbons in April 1994, it should be obvious that the plaintiffs could not be estopped from collecting unpaid contributions for the period *before* the Aldrich-Gibbons conversation, from September 1990 to April 1994. As we have previously indicated, the agreements clearly directed the defendants to make monthly payments into the Funds. The 1991 judgment itself should have put the plaintiffs on notice as to their obligations to the Funds. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695 (6th Cir. 1994). The record is utterly devoid of any evidence that the plaintiffs engaged in conduct at the time of the 1991 default judgment that could work to misrepresent defendants' duties to continue making payments. The mere fact of the plaintiffs' silence between the judgment and April 1994, without more, cannot be grounds for estoppel. *See Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1160 (6th Cir. 1980) (holding in patent infringement action that "[f]or silence to work an estoppel, it must be sufficiently misleading to amount to an estoppel. . . . [a]t most, the record shows

In this second lawsuit, the instant case, both the plaintiffs and the defendants moved for summary judgment on the issue of the defendants' liability to the funds. Both parties argued that there were no genuine issues of material fact. The defendants, for their part, insisted that the plaintiffs should be prevented from enforcing the agreements under the equitable doctrines of laches and estoppel and that the agreements themselves were void due to fraud in the execution. At the hearing on the motions, the district court denied summary judgment to the plaintiffs and held for the defendants, referring to both laches and equitable estoppel as grounds for denying the plaintiffs' prayer for relief. In its opinion denying the plaintiffs' later motion for reconsideration, the court held that the plaintiffs should be estopped from enforcing the collective bargaining agreements because the defendants had shown all the elements of equitable estoppel required by this court. The plaintiffs appeal from this order.

## *DISCUSSION*

We review a district court's grant of summary judgment de novo. *See Tregoning v. American Community Mut. Ins. Co.*, 12 F.3d 79, 81 (6th Cir. 1993). We may affirm the decision below only if we determine that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All inferences drawn from the submissions to the court must be viewed in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is inappropriate if "the evidence is such that a reasonable jury could return a verdict for the [nonmovant]." *Sowards v. London County*, 203 F.3d 426, 431 (6th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

Well over a century ago, the Supreme Court held that the beneficiary of a contract may be estopped from enforcing that contract when he has "by his representations or his conduct

induced the other party . . . to give him an advantage which it would be against equity and good conscience for him to assert." *Insurance Co. v. Wilkinson*, 80 U.S. 222, 233 (1871). The Sixth Circuit has followed the nation's highest court in requiring that such representations must contain an element of fraud, either intended deception or "such gross negligence . . . as to amount to constructive fraud." *Brant v. Virginia Coal and Iron Co.*, 93 U.S. 326, 335 (1876); *see also TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346, 350 (6th Cir. 1979) (requiring a showing of either "misrepresentations, affirmative acts of misconduct, or intentionally misleading silence" to establish estoppel). Fraudulent conduct alone is not enough, however; the party asserting estoppel must not know the truth behind the other party's representations, *see Heckler v. Community Health Servs.*, 467 U.S. 51, 59 n.10 (1984), must reasonably rely on the other's actions, *see id.* at 59, and must suffer substantial detriment as a result. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 323 (1936); *see also Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984) ("Estoppel requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment.").

The plaintiffs argue that equitable estoppel should not be available as a defense in this case, because to claim that the plaintiffs' agent's oral representations and silence worked to estop enforcement of the collective bargaining agreements would contravene ERISA's mandate that benefit plans must be in writing, so that beneficiaries may determine with certainty exactly what rights and obligations the plan sets forth. *See Musto v. American Gen. Corp.*, 861 F.2d 897, 910 (6th Cir. 1988) (citing H.R. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5077-78). We find it unnecessary, however, to decide whether or not equitable estoppel should generally be available as a defense to contribution recovery actions, because in this case the defendants cannot establish a basis to estop recovery.

S.W.2d 942, 948 (Tex. Civ. App. 1974) (stating that "[i]n no event can an estoppel arise in favor of one who has been guilty of contributory negligence" and citing *Sheffield Car Co. v. Constantine Hydraulic Co.*, 137 N.W. 305 (Mich. 1912)).

As for the final factor, detrimental, justifiable reliance by the party asserting estoppel, the district court never articulated, either in the hearing on the parties' motions for summary judgment or in its opinion denying plaintiffs' motion for reconsideration, how the defendants' reliance on the conduct of the plaintiffs and its agents was both substantially detrimental and justifiable. The defendants assert that they made other fringe benefit arrangements for their employees after the 1991 judgment, and that to have to pay monies into the Funds now would work a detrimental change in position. But this purported reliance on plaintiffs' conduct, in the face of the explicit terms of the agreements establishing the defendants' duty to make monthly payments to the Funds, simply cannot be described as justifiable. The defendants could reasonably have had no more than a mere hope that Dawn Aldrich's conduct, including her 1994 statements and ensuing delay in attempting to schedule an audit, meant that the plaintiffs were not going to enforce the defendants' duty to make the monthly payments.

These facts resemble those at issue in *Teamster's Local 348*, in which a union representative told non-union employees of the defendant employer that they would not be eligible for benefits from fringe benefit funds established by prior collective bargaining agreements. The defendant claimed that, because they relied on the union representative's statements and provided alternative benefits to the non-union employees, the funds should be estopped from seeking contributions under the agreements. The court held for the plaintiff funds, stating that "[t]he estoppel defense fails because [the defendant] had knowledge about the plans and its obligations thereunder, and did not reasonably rely on [the union representative's] representations." *Teamster's Local*

*diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means*, he cannot claim to have been misled by relying upon the representation or concealment.

*Community Health Servs.*, 467 U.S. at 59 n.10 (emphasis added); *see also Teamster's Local 348*, 749 F.2d at 319 (stating that, for estoppel to apply, representation must be made "to a party without knowledge of the facts *and without the means to ascertain them*") (emphasis added). Gibbons testified that he believed he received and retained copies of the agreements after signing them. Dawn Aldrich testified that Gibbons told her that he would check to see if he had letters terminating the agreements. Gibbons thus apparently had adequate means, through the agreements themselves, the presence or absence of letters terminating the agreements, and communication with union officials to acquire knowledge by reasonable diligence as to whether the agreements were still in effect. Many courts deciding contribution recovery cases have held that an employer's failure to read accessible collective bargaining agreements defeats a claim of ignorance. *See, e.g., Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 762 (9th Cir. 1981) ("We have determined that the collective bargaining agreement unambiguously called for the payment of the contributions . . . . [e]ven if we could somehow find that the trustees intended to mislead the defendants, and nothing in the record indicates such an intent, we cannot agree that the defendants were 'ignorant' of their responsibility under the agreement."); *Chicago Dist. Council of Carpenters Pension Fund v. Monarch Roofing Co., Inc.*, 601 F. Supp. 1112, 1117 (N.D. Ill. 1984) (holding no estoppel where defendant "had ready access to [copies of the agreements,] and thus had easy access to facts contrary to those on which it might have relied"). The failure of the defendants in this case to do so since 1991 could, without exaggeration, be called contributory negligence. Certainly, the resulting ignorance creates no basis for equitable estoppel. *See El Paso Nat'l Bank v. Southwest Numismatic Inv. Group, Ltd.*, 548

In past ERISA cases involving a claim of equitable estoppel, we have required a showing of five common-law[2] elements:

  1) conduct or language amounting to a representation of material fact;

  2) awareness of the true facts by the party to be estopped;

  3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

  4) unawareness of the true facts by the party asserting the estoppel; and

  5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead*, 944 F.2d at 1298 (citing *Apponi*, 809 F.2d at 1217). *All* of these elements must be present before the court may order estoppel. We believe that no reasonable jury could return a verdict finding that each of the factors was satisfied here, and we therefore hold that the defendants' equitable estoppel argument fails as a matter of law.

In deciding for the defendants on the third equitable estoppel factor, either an intention on the part of the party to be estopped that its representation be acted upon or conduct such that the party asserting estoppel "has a right to believe" the party to be estopped so intends, *see Armistead*, 944 F.2d at 1298, the district court found "that plaintiffs' auditor's

---

[2]ERISA authorizes the federal courts to fashion a body of federal common law to enforce agreements governed by the statute. *See Armistead*, 944 F.2d at 1298 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)).

conduct gave defendants a right to believe plaintiffs would not be pursuing further pension contributions." (The court did not make a finding that the plaintiffs intended defendants should act upon Aldrich's conduct.) Specifically, the court's order characterized Dawn Aldrich's telling William Gibbons that she would check her files regarding the collective bargaining agreements and then neglecting to take further action as conduct leading the defendants to believe that the Trustees would not enforce the agreements. The definitional language regarding the "rights" of the party claiming estoppel, developed and adopted by many courts over the years, appears to be an attempt to capture not only affirmative misrepresentations or other misconduct, but also the "gross negligence" the Supreme Court identified in *Brant* as grounds for estoppel. *Brant*, 93 U.S. at 335; *see also* 28 Am. Jur. 2d Estoppel and Waiver § 61 (1999) (tracing development of common law equitable estoppel definition). Here, the defendants apparently claim that Aldrich's delay after sending mixed messages as to her knowledge of the agreements' validity constituted such gross negligence. Yet, to bring an estoppel defense based on negligence, "it is not enough to show that [a party] was careless. He must have been careless in respect of some duty owing to the [defendant] or the public." *People's Trust Co. v. Smith*, 109 N.E. 561, 562 (N.Y. 1915) (Cardozo, J.). The collective bargaining agreements signed by the defendants created a duty to make monthly payments into the Funds and established that the plaintiffs would oversee those payments; they did not, however, create a legal duty in the plaintiffs, as trustees for the Funds, to the defendants to remind them of the need to make payments. Nor did Aldrich's conduct, in the face of Gibbons's assertions that he would check his records regarding the agreements, create such a duty, or appear to us to be otherwise grossly negligent.[3] We therefore hold that, as

---

[3]Aldrich testified:
A. To my knowledge we never received letters terminating the agreements with the locals that he has signed signature pages

a matter of law, the defendants had no right to believe they would be excused from further contributions to the funds.[4]

We find even more substantial deficiencies in the district court's analysis of the fourth and fifth equitable estoppel factors. The court found "little doubt" that the defendants satisfied the fourth factor, unawareness of the true facts by the party asserting the estoppel, since William Gibbons testified "that he believed the earlier lawsuit terminated the collective bargaining agreements." In *Community Health Servs.*, the Supreme Court discussed this factor and how to satisfy it:

> The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, *or had the means by which with reasonable*

---

with.
Q. Could those letters exist without your knowledge?
A. Yes, they could.
Q. Are they likely to exist without your knowledge?
A. It's possible. I asked him.
Q. You asked?
A. Mr. Gibbons.
Q. And what –
A. If he had letters.
Q. And he said no?
A. He said he wasn't sure. He would have to check.

[4]The Trustees' delay in bringing this action does not support a finding of gross negligence. While a consideration of the appropriateness of equitable estoppel in any case must be based upon the specific factual circumstances of that case, other courts deciding contribution recovery claims have found much longer delays no prohibition to enforcement. *See, e.g.*, *Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1507 (9th Cir. 1986) (seven years); *Teamsters Local 251, Health Servs. and Ins. Fund v. Teamsters Local 251*, 689 F. Supp. 48, 52 (D.R.I. 1988) (20 years).