RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN CIVIL LIBERTIES UNION OF
KENTUCKY, RAYMOND HARPER, and ED
MEREDITH,

> *Plaintiffs-Appellees,*

> *v.*

GRAYSON COUNTY, KENTUCKY,

> *Defendant-Appellant.*

No. 08-5548

Filed: May 14, 2010

Before: MOORE and McKEAGUE, Circuit Judges; FORESTER, District Judge.[*]

_____

## ORDER DENYING
## PANEL REHEARING

_____

On January 14, 2010, the court issued its opinion reversing the district court's award of summary judgment in favor of plaintiffs and directing entry of judgment in favor of Grayson County. Now before the court are plaintiffs' petition for panel rehearing and plaintiffs' objections to Grayson County's bill of costs.

## I

In the petition for rehearing, plaintiffs do not challenge our reversal of the district court's award of summary judgment in their favor, but ask us to reconsider and amend the opinion insofar as it directs entry of judgment in favor of Grayson County. Plaintiffs contend there is a genuine issue of material fact that precludes award of summary judgment to Grayson County. They ask us to remand the case to the district court for

_____

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

further proceedings. In support, they rely on the affidavit of plaintiff Raymond Harper, describing a statement made by Judge Executive Gary Logsdon in May 2002, when the Ten Commandments document was, pursuant to the district court's preliminary injunction, removed from the Foundations of American Law and Government Display. Specifically, Harper recalls Logsdon having asked those present to divide themselves into two groups: those "for" and those "against the Ten Commandments." Logsdon denies having made such a statement and his denial is said to pose a genuine issue of material fact that should forestall award of summary judgment to Grayson County.[1]

Even accepting that Logsdon made the reported statement, and accepting that the statement by a single Fiscal Court member, made in conjunction with removal of the Ten Commandments some seven months after the display was installed, may be relevant to show the purpose of the display, the statement does not pose a genuine issue of *material* fact.[2] Contrary to plaintiffs' argument, Logsdon's statement simply bears no indication of *religious* purpose. The reported statement, on its face, says nothing of a purpose to advance religion. As explained in our opinion, because the Ten Commandments have both religious and secular significance, merely referring to or expressing support for the Ten Commandments as "the Ten Commandments" does not evidence the sort of "manifest religious purpose" that runs afoul of the Establishment Clause.

---

[1] Despite the fact that we are faced only with the motion for panel rehearing actually filed by Plaintiffs, the Dissent looks far beyond any of the arguments made or the documents cited in the brief before us. The question we address here is solely whether the statement allegedly made by Logsdon, as described in Harper's affidavit, creates a genuine disputed issue of material fact that would render the grant of Grayson County's motion for summary judgment inappropriate.

[2] The Dissent suggests incorrectly that we have failed to conduct the proper analysis. To the contrary, faced with an extensive and largely unchallenged record of the events surrounding Grayson County's decision to mount its Historical Display, we concluded that – even drawing all reasonable inferences in favor of the respective non-moving parties – the Plaintiffs were not entitled to summary judgment, and Grayson County *was*. When faced with competing motions for summary judgment, we clearly have the authority to direct "an order of summary judgment to a party appealing the grant of the same to an adversary." *Trustees of Michigan Laborer's Health Care Fund v. Gibbons*, 209 F.3d 587, 595 n.5 (6th Cir. 2000). Plaintiffs argue, however, that we failed to consider the statement Logsdon allegedly made when removing the Ten Commandments from the display. Having concluded that we made no mistake and that we appropriately considered whether the County was entitled to summary judgment, we now conclude that our finding that the County *was* so entitled is not affected by the statement allegedly made by Logsdon.

Plaintiffs argue that "the express pronouncement of sectarian-based support from the County Judge Executive . . . is indicative of an official religious purpose" – but do not explain how dividing bystanders up according to whether they are "for" or "against" a document with both secular and religious significance necessarily demonstrates "sectarian-based support."[3]  Nor do the Plaintiffs identify how the statement, made as the document was removed, could be reasonably construed by the objective observer as evidencing an endorsement of religion, other than by arguing that it is "indicative" of religious purpose and effect in the posting of the display.  Even though there is a genuine dispute as to whether Logsdon made the statement, the dispute is immaterial because even assuming Logsdon made the statement, it does not materially assist plaintiffs in carrying their burden of demonstrating that the purpose or effect of the display is predominantly religious.  It does not alter the analysis in the panel's original decision and does not warrant rehearing or modification of our opinion.  Accordingly, the petition for panel rehearing is **DENIED**.

## II

The Dissent devotes significant space to consideration of various newspaper accounts of the ceremony during which the County rehung the Ten Commandments following our decision.  Whether Grayson County's legislators made the statements reported in these articles, and whether these statements represent a violation of the

---

[3]The Dissent asserts that, in his statement, Logsdon "specifically demanded that those individuals in attendance state their religious affiliations or whether they stood with [his] clear preference that the Ten Commandments remain in place."  Nowhere, however, in *any* of the documents cited by Plaintiffs – or by the Dissent – is there *any* indication that Logsdon demanded that anyone state a religious affiliation.  It simply did not happen, and suggesting that it did is deeply misleading.  Asking whether an individual, faced with a decision by a federal court ordering a county to remove a copy of the Ten Commandments from a larger display, is "for" or "against" the Ten Commandments is not the same thing as asking whether that same individual is or is not a Christian, or a Jew, or a Buddhist, or even an atheist.  The Dissent points out, citing the plurality in *Van Orden v. Perry*, 545 U.S. 677, 690 (2005), that the Ten Commandments are certainly religious – and so, presumably, that Logsdon's statement that bystanders must array themselves for or against the document constitutes a demand that bystanders declare some religious affiliation.  The *Van Orden* plurality explained *in the same paragraph*, however, that the Ten Commandments *also* have "an undeniable historical meaning" – and so Logsdon's comment, on its face, does *not* demand a religious response.  *Id.*  As the *Van Orden* plurality concluded, "[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause."  *Id.*

The Dissent also makes much of the fact that Chester Shartzer, a private citizen whom the Dissent characterizes as a "religious official," was present while the Ten Commandments document was being removed from the courthouse display.  The notion that Shartzer, by virtue of his occupation and presence, tainted the County's official actions with an aura of religiosity is adequately addressed in our original majority opinion.

Establishment Clause, is, if anything, a matter to be presented before a district court as part of a different case. These questions are not, however, relevant to *this* case as it appears before us now. At the time we issued our opinion, the rehanging ceremony had necessarily not yet happened; indeed, the ceremony did not take place until well after the district court initially granted Plaintiffs' motion for summary judgment and even after we reversed and ordered the district court instead to grant Grayson County's motion for summary judgment. It is not clear how any event that occurred following the grant of summary judgment – or how any comments that do not refer to the past – could demonstrate that a court *erred* in granting summary judgment on the basis of the evidence before it; presumably, that is why neither side even mentioned these events in the briefs addressing panel rehearing. The Dissent, moreover, explicitly "recognize[s] that [these articles] are not competent evidence upon which to base a conclusion that the majority erred in granting judgment in favor of the County." (Dissent at 11.) Aside from the fact that these articles are neither admissible nor legally relevant, we are seriously concerned with the Dissent's reference to and reliance on quotations from these articles, which are not part of any record, in a published opinion. These articles are not verified or supported by any affidavit or any deposition, and do not constitute legal evidence. In short, they are simply hearsay, and to rely in any way on what *these articles say* various Grayson County legislators *said* is both incorrect and inappropriate.

**III**

Grayson County has filed a bill of costs, seeking recovery of its $455.00 appellate filing fee. Plaintiffs object. They ask us to exercise our discretion under Fed. R. App. P. 39 to deny costs because they proceeded in good faith and their claim presented close and difficult questions of constitutional interpretation involving important civil liberties. We agree. Plaintiffs' objection to Grayson County's bill of costs is **SUSTAINED**. The parties on both sides shall bear their own costs.

KAREN NELSON MOORE, Circuit Judge, dissenting. The ACLU argues that the panel majority in *ACLU v. Grayson County, Ky.*, 591 F.3d 837 (6th Cir. 2010), improperly directed the district court to enter judgment in favor of Grayson County despite the fact that questions of material fact still remained as to whether the County had a predominantly religious purpose in erecting the Foundations Display ("Display"). Although I stand steadfast in my conviction "that the County erected the Display with a predominantly religious purpose and that the Display has the purpose or effect of endorsing religion" in violation of the Establishment Clause, *id.* at 863 (Moore, J., dissenting), there remains, at the very least, a question of material fact that precludes the entry of judgment in favor of the County. For the following reasons, I would grant the ACLU's petition for panel rehearing and must dissent.

As the ACLU observes, the fact that both parties moved for summary judgment did not automatically submit the case to us for a plenary decision on the merits. *Parks v. LaFace Records*, 329 F.3d 437, 444–45 (6th Cir. 2003); *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Instead, because we were effectively ruling on cross-motions for summary judgment, the panel majority was obligated to "'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion [was] under consideration.'" *B.F. Goodrich*, 245 F.3d at 592 (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *see also* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2720, at 354 (3d ed. 1998) (noting that the common practice when reversing a district court's grant of summary judgment is for the reviewing court to "reverse and remand the case for the trial court to make further rulings on the basis of the reviewing court's opinion"). This is something that the majority plainly did not do.

Conducting the proper analysis and viewing the facts in the light most favorable to the ACLU, I believe that the ACLU has raised a genuine issue of material fact sufficient to merit the vacation of the panel majority's original judgment and require a remand. Looking first to those facts not discussed in the original panel opinion, the most

striking evidence that calls into question the County's purpose is Fiscal Court Judge Executive Gary Logsdon's behavior at the Ten Commandments' removal ceremony. According to an affidavit submitted in support of the ACLU's motion for summary judgment and Reverend Shartzer's deposition testimony, Judge Logsdon planned and presided over a ceremony during which the Ten Commandments were removed from the Display. Dist. Ct. Docket ("Doc.") 48-2 (Harper Aff., Pl. Mot. for Summ. J. at 2); Record on Appeal ("ROA") at 395 (Shartzer Dep.). In addition to Judge Logsdon and Reverend Shartzer, a "couple of fiscal court magistrates" and some other individuals were in attendance. ROA at 395 (Shartzer Dep.). At that event, the Ten Commandments were removed and delivered to Reverend Shartzer, who promised the individuals present at the ceremony that he would safeguard the document until the County was permitted to rehang it. *Id.* at 396.

Judge Logsdon then proceeded to "deliver several remarks to those in attendance," Doc. 48-2 Harper Aff., Pl. Mot. for Summ. J. at 2), which included a statement that "he would [have] like[d] for them [the Ten Commandments] to have stayed up." ROA at 396 (Shartzer Dep.). Following his remarks, Judge Logsdon required everyone "in attendance to divide on either side on an imaginary line depending upon whether the individuals were for or against the Ten Commandments." Doc. 48-2 (Harper Aff., Pl. Mot. for Summ. J. at 2). Reverend Shartzer testified that Judge Logsdon said "something to the effect" that those in attendance must "[s]tand with us on this issue.'" ROA at 397–98 (Shartzer Dep. (quoting Judge Logsdon)). Judge Logsdon then specifically requested that a local reporter in attendance state his preference for, or stance on, the Ten Commandments. When the reporter responded that "he was neutral, Judge Executive Logsdon announced to those in attendance that [the reporter] . . . was 'against the Ten Commandments.'" Doc. 48-2 (Harper Aff., Pl. Mot. for Summ. J. at 2–3); ROA at 399 (Shartzer Dep.).

I believe that this evidence raises a genuine issue of material fact as to whether the County's purpose in erecting the Display was predominantly religious, and the majority's judgment in favor of the County was not proper. Not only were a public

official and a religious official actively involved in conducting a ceremony where the Ten Commandments were removed begrudgingly and in response to a court order that the Display violated the Establishment Clause, but the public official also specifically demanded that those individuals in attendance state their religious affiliation or whether they agreed with the public official's clear preference that the Ten Commandments remain in place. The public official then chastised an individual who desired to remain unaffiliated for not supporting the Ten Commandments and deemed that individual to be against the religious text. *See McCreary County v. ACLU*, 545 U.S. 844, 866 n.14 (2005) (condemning those displays that "demonstrat[e] a preference for one group of religious believers as against another"). Viewing these facts in the light most favorable to the ACLU, I believe that, at a minimum, a material question of fact remains as to whether an objective observer could rightly conclude that the County had a predominantly religious purpose in enacting the Display. *Cf. id.* at 851 (concluding that a similar Display violated the Establishment Clause and noting that a county's judge executive not only attended the ceremony hanging the Ten Commandments accompanied by his pastor, but that, like here, that official delivered remarks).

The majority's assertion that Judge Logsdon's requirement that the individuals at the ceremony state whether they were for or against the Ten Commandments "simply bears no indication of *religious* purpose," Maj. Op. at 2, is unsupportable. This conclusion completely ignores the fact that Judge Logsdon made more than this one statement, ignores the context within which Judge Logsdon made his statements, and ignores the meaning that an objective observer would ascribe to Judge Logsdon's remarks. Judge Logsdon's actions cannot be divorced from the fact that the ceremony was held to lament the removal of the Ten Commandments following a decision that the Display evidenced a predominantly religious purpose. Moreover, Judge Logsdon did not ask whether the attendees were "for or against" the Display as a whole, but he instead demanded that those in attendance state their preference for an undeniably religious text, the Ten Commandments. *See Van Orden v. Perry*, 545 U.S. 677, 690 (2005) (plurality) ("Of course, the Ten Commandments are religious—they were so

viewed at their inception and so remain."). This requirement cannot be viewed as mandating anything other than that those in attendance state their religious allegiances.[1]

And if there were any question about his religious purpose, Judge Logsdon went even further by chastising an individual who refused to express his religious position by proclaiming that the individual's wish for neutrality was a declaration that he was *against* the Ten Commandments. If Judge Logsdon's statements bore no indication of religious preference, then a statement of neutrality would not have been so readily interpreted as an expression of disfavor or disapproval of the Ten Commandments. The majority ignores this evidence, but viewing all the evidence in the light most favorable to the ACLU, as we must, I have no doubt that Judge Logsdon's statements and actions evince religious support. At the very least, however, the evidence is sufficient to raise a genuine issue of material fact as to the County's purpose in erecting the Display.

The majority further claims that Judge Logsdon's actions are immaterial because they occurred after the Fiscal Court installed the Display. But the moment in time that is the most probative as to the Fiscal Court's intent in authorizing the Display was not the Display's installation but rather its approval. Thus, although the ceremony at issue may be removed temporally from the Fiscal Court's approval of the Display, so are several key pieces of evidence upon which the majority initially relied in determining that the County had no predominantly religious purpose in enacting the Display. For example, in the original panel opinion, the majority relied heavily on Reverend Shartzer's deposition testimony that analogized the Display to "road signs," but as I highlighted in dissent, Reverend Shartzer "did not make his statements . . . until the

---

[1]The majority asserts that "[n]owhere . . . in *any* of the documents . . . is there *any* indication that Logsdon demanded that anyone state a religious affiliation." Maj. Op. at 3 n.3. Looking at the evidence recounted above in the light most favorable to the ACLU, however, I vehemently disagree. Requiring that an individual express whether he or she is for or against the Ten Commandments in the context recounted above is precisely akin to asking an individual to state a religious preference. Again, it is notable that Judge Logsdon did not ask those in attendance to state whether they were for or against the Display—just the religious document contained therein. And contrary to the majority's assertion, the Supreme Court's statement in *Van Orden* that the Ten Commandments "*also* have 'an undeniable historical meaning'" does not defeat the conclusion that requiring an individual to state whether he or she is for or against the Ten Commandments harbors religious significance. Maj. Op. at 3 n.3 (quoting *Van Orden*, 545 U.S. at 690). In fact, if there are two manners in which an individual could view the Ten Commandments—one religious and one historical—then viewing the evidence in the light most favorable to the ACLU, as we must, the religious one governs.

second meeting, which occurred *after* the Fiscal Court originally approved the Display." *Grayson County*, 591 F.3d at 860 (Moore, J., dissenting).

The majority's sudden about-face as to the probative nature of post-approval evidence is even more inexplicable in light of emphasis that the majority placed on the Display's Explanation Document in the original panel opinion. We must remember that *not one* of the Fiscal Court members had viewed this document at the time they approved the Display. *See id.* at 861. Thus, to the extent that the panel majority was willing to consider the Explanation Document as "the best evidence," *id.* at 851 n.7 (majority opinion), of a non-religious purpose when viewing the evidence in the light most favorable to the County, so too must the panel majority consider other post-approval objective evidence when viewing the evidence in the light most favorable to the ACLU.

But the ACLU is not even required to rely solely upon Judge Logsdon's behavior at the removal ceremony in order to merit vacation of the judgment in favor of the County. For the County to merit summary judgment in its favor, it must "be willing to concede the most favorable view of the facts to the" ACLU, *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). This concession extends to *all* of the facts, including those highlighted at length in the panel's original opinions:

> The minutes from the September 18, 2001 Grayson County Fiscal Court ("Fiscal Court") meeting, which constitute the type of "legislative history" of which an objective observer would be aware, reveal the following: (1) Reverend Shartzer, a religious leader, approached the Fiscal Court and asked "the County *to place the Ten Commandments* in the County buildings"; (2) Reverend Shartzer stated that "the Civil Liberties [sic] would look more favorable [sic] toward [hanging the Ten Commandments] if they were hanging in a grouping with the other historical documents"; (3) "Judge Logsdon and the Court members expressed the desire to place them[, the Ten Commandments,] in the County buildings and asked the County Attorney if he thought they could do so in a way that would not cause problems for the County"; (4) Magistrate "Damon Hornback made a motion *to place the Ten Commandments* in the buildings," which "died for lack of a second"; and (5) immediately thereafter Magistrate Sandy Farris made another motion, which Damon Hornback seconded and which passed by a unanimous vote, that ordered "[t]he County place *the Ten Commandments* in the Court House along with the Historical documents." Record on Appeal

("ROA") at 417 (09/18/01 Meeting Minutes) (emphasis added).  On September 28, 2001, the Fiscal Court reaffirmed the September 18 vote that had already approved the Display, ordering that "[t]he following resolution along with the Historical Documents and the *Ten Commandments* be placed in a grouping in the Court House."  ROA at 419 (09/28/01 Meeting Minutes) (emphasis added) . . . [T]he Fiscal Court never mentioned at the first meeting when it voted to approve the Display that the Display would be educational or showcase America's legal history.

*Grayson County*, 591 F.3d at 857–58 (Moore, J., dissenting).**[2]**

I believe that the facts recounted in the original panel opinions (which now must be viewed in the light most favorable to the ACLU) plainly raise a question of material fact sufficient to preclude the entry of summary judgment in the County's favor.  This is not a case where "the facts are uncontroverted[] and the proper disposition is clear." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 366 (6th Cir. 1993); *cf. Trustees of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 595 (6th Cir. 2000) (discussing when directing "the district court to order summary judgment is appropriate").  The County's actions surrounding the Display as a whole make it "possible to draw inferences in either direction," and it is the law of this Circuit that in such instances, a remand is required.  *B.F. Goodrich*, 245 F.3d at 592.  In fact, in the original panel decision, the majority conceded that, "[i]n [its] opinion, . . . the approval history [of the Display] is simply *ambiguous*."  *Grayson County*, 591 F.3d at 852 n.8 (emphasis added). The Supreme Court has emphasized that its "precedents sensibly forbid an observer to turn a blind eye to the context in which the policy arose," *McCreary County*, 545 U.S. at 866 (internal quotation marks and alteration omitted), yet by refusing to view the

---

**[2]**The majority claims that the issue before the panel on the ACLU's petition for rehearing "is solely whether the statement allegedly made by Logsdon, as described in Harper's affidavit, creates a genuine disputed issue of material fact" and criticizes the mention of additional record evidence. Maj. Op. at 2 n.1.  Despite the majority's framing of the issue, however, the ACLU challenges more than the panel's failure to consider that once piece of evidence, and the majority's failure to recognize the larger legal question that the petition raises is in error.  The ACLU explicitly argues that the panel majority improperly entered judgment in favor of the County "without construing the disputed facts and reasonable inferences in Plaintiffs' favor."  Pl. Pet. Panel Rehr'g at 4.  Although the ACLU notes specifically the panel's failure to consider Judge Logsdon's statement, the larger-looming legal error that the petition raises, and which is supported by the case law that the ACLU cites, is that the panel failed to draw all reasonable inferences from the totality of the evidence in favor of the ACLU before entering judgment for the County.  The majority's construction of the petition is simply too narrow.

"ambiguous" evidence of the "approval history" in the light most favorable to the ACLU, the majority does precisely what the Supreme Court prohibits.  *See also ACLU v. Mercer County*, 432 F.3d 624, 630 (6th Cir. 2005) (requiring the analysis of purpose to include consideration of "the text, legislative history, and implementation of the state action" (internal quotation marks omitted)).

Judgment for the County on this record was improper.  Based on the evidence recounted above concerning the Ten Commandments removal ceremony and the evidence outlined extensively in the original panel opinions, *see generally Grayson County*, 591 F.3d 837, the ACLU has raised a genuine issue of material fact as to whether the County's purpose in approving the Display was predominantly religious.  Upon the majority's conclusion that the district court erred in granting summary judgment in favor of the ACLU, the proper course of action for the majority would have been for the panel to view the evidence in the light most favorable to the ACLU, including all of the disputed evidence, and remand the case to the district court.  I therefore respectfully dissent.

As a final note, I am compelled to highlight the recent newspaper accounts of the ceremony during which the County rehung the Ten Commandments at the Grayson County courthouse.  Although I recognize that they are not competent evidence upon which to base a conclusion that the majority erred in granting judgment in favor of the County, these manifestations do serve to confirm what the evidence before the district court showed—the Fiscal Court had a predominantly religious motivation when it approved the Display in 2001.

Assuming the same role that he occupied at the removal ceremony outlined above, Judge Logsdon both planned and led the rehanging ceremony.  *See* Bill Estep, *Appeals Court Reverses Grayson Ten Commandments Decision*, Lexington Herald-Leader, Jan. 15, 2010, http://www.kentucky.com/2010/01/15/1095997/appeals-court-reverses-grayson.html; Ben Sheroan, *Grayson County Returns Commandments to Courthouse*, News Enterprise, Jan. 19, 2010, http://www.thenewsenterprise.com/cgi-bin/c2.cgi?053+article+News.Local+20100118145947053053026.  The ceremony was

conducted "[a]mid anthems, hymns, and plenty of 'amens,'" and several local pastors were invited to speak. Linda B. Blackford, *Crowd Praises the Return of 10 Commandments*, Lexington Herald-Leader, Jan. 19, 2010, http://www.heraldleaderphoto.com/2010/01/19/crowd-praises-the-return-of-10-commandments. Perhaps the most revelatory moments of the rehanging ceremony, however, involved the explicit statements of the Fiscal Court members themselves, which clearly belie any claim that the purpose of the Display was something other than religious:

- "We're just overwhelmed and thank the Lord," Logsdon said . . . , "It gives you great hope of a moral country." Estep, *supra*.

- "If we don't get something back for Christian people to believe in, what kind of shape will our country be in?," [Magistrate Presto Gary asked], "But we had faith and kept praying." Blackford, *supra*.

- "[The Ten Commandments are] something good for everybody to live by," added fellow magistrate Jason Dennis. *Id.*

- "Grayson County along with our country was started on Christian values, said [C]ounty magistrate Harold Johnson. "This is a step forward to get Christianity back." Brett Barrouquere, *Ky. County Reposts Ten Commandments: Grayson County Officials Praise God After Winning Court Ruling*, Associated Press, Jan. 18, 2010, at 2 (on file with the Clerk's Office for the U.S. Court of Appeals for the Sixth Circuit).

*See also* Daniel Kemp, *Ten Commandments Back on Courthouse Walls in Grayson County*, ABC News 13, Jan. 18, 2010, http://www.wbko.com/news/headlines/81999242.html; Editorial, *It Really Is Just About Religion*, Lexington Herald-Leader, Jan. 21, 2010 (on file with the Clerk's Office for the U.S. Court of Appeals for the Sixth Circuit).

Since September 18, 2001, when the Fiscal Court first voted to approve the Display, the residents of Grayson County have been aware that the County has "demonstrat[ed] a preference for one group of religious believers as against another." *McCreary County*, 545 U.S. at 866 n.14. Now there is certainly no mistake that "the

government is taking sides." *Id.* This precisely the type of government action that the Establishment Clause was meant to prohibit.

For all the reasons that I have discussed, I would grant panel rehearing.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk