NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0189n.06

No. 12-2692

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THE DOG POUND, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| CITY OF MONROE, MICHIGAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

Before: BOGGS, NORRIS, and WHITE, Circuit Judges.

BOGGS, Circuit Judge: Plaintiff-Appellant, The Dog Pound, LLC, is an aspiring mobile hot dog vendor. It appeals a district court decision granting the defendant's motion for summary judgment and dismissing, in its entirety and with prejudice, the plaintiff's suit alleging the unconstitutionality of a municipal ordinance. The plaintiff claimed that an ordinance regulating the business of itinerant merchants in downtown Monroe, Michigan violates the Equal Protection Clause, the Due Process Clause, and the dormant Commerce Clause. The plaintiff also alleged violations of parallel provisions of the Constitution of Michigan.

For the reasons set forth below, we affirm the district court's grant of summary judgment.

I

In 2009, The Dog Pound, a business seeking to operate a mobile hot dog stand in Monroe, Michigan, purchased a top-of-the-line hot dog cart and submitted an application for a license under Monroe's Hawker, Peddler, and Transient Merchant ordinance. The ordinance, in

its 2009 version, regulated street-vendors' operations and required additional permission, beyond basic licensing, to be granted by the Mayor and City Council for licensees who wished to conduct street-vending operations in a designated Restricted Area that covered much of downtown Monroe. It additionally laid out the basic licensing requirements and established a 10-minute time limit on any hawker's or peddler's activities at any one location within the city. After The Dog Pound submitted a license application and an official request for permission to operate in the restricted area, the council met on June 26, 2009, solicited views from the public and the city government, and eventually denied The Dog Pound's request. Within the month, The Dog Pound sued the city in the Monroe County Circuit Court.

The Dog Pound's complaint claimed that the ordinance violated the constitutions of the United States and Michigan because it created an illegal classification, treating itinerant merchants differently from permanent business owners. This disparate treatment, the complaint maintained, violated the Equal Protection clauses of the United States and Michigan constitutions. The original complaint sought a declaratory judgment that the ordinance was invalid or, in the alternative, a writ of mandamus.

After the city removed the suit to the United States District Court for the Eastern District of Michigan, The Dog Pound moved for a preliminary injunction but the court held its ruling in abeyance because the parties had entered into settlement negotiations. In the meantime, in 2011, while settlement negotiations were ongoing, the city amended the hawker ordinance, eliminating the restricted area. When negotiations failed, the court again took up the question of the preliminary injunction, ultimately denying The Dog Pound's motion because the amendment to the "ordinance essentially moots the plaintiff's arguments."

Following discovery, The Dog Pound filed two amended complaints. These reiterated the claims of the initial complaint but added two additional constitutional grounds. The first claimed a violation of the Due Process clauses of the United States and Michigan constitutions, alleging that the sole purpose of the act was to protect local static businesses against competition from itinerant merchants. The second claimed a violation of the dormant Commerce Clause, alleging that the disparate treatment of itinerant merchants discriminates against and burdens out-of-state businesses in favor of local businesses.

The city moved for summary judgment. The court granted the city's motion and dismissed the entire action with prejudice. The Dog Pound timely appealed.

## II

This court reviews a district court's grant of summary judgment de novo. *See Trustees of Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 590 (6th Cir. 2000). The district court's decision is to be affirmed only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In weighing a motion for summary judgment, we draw all reasonable inferences in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III

The Dog Pound's second amended complaint alleged three distinct constitutional violations in support of its demand for a declaratory judgment or, alternately, a writ of mandamus. The ordinance purportedly violated: the Equal Protection clauses of the United States and Michigan constitutions, the Due Process clauses (presumably of both the United States and Michigan constitutions), and the dormant Commerce Clause. Additionally, The Dog

Pound alleges that the district court failed to consider the merits of its two properly-presented claims arising under the Constitution of Michigan.

A

The Dog Pound claims that the City of Monroe's ordinance violated the Equal Protection Clause by creating an unconstitutional classification in that it treated hawkers, peddlers, and transient merchants differently from other businesses. The Dog Pound further claimed that the city enacted the ordinance for the specific purpose of eliminating competition against local brick-and-mortar businesses.

The purpose of the Equal Protection Clause is to "protect[] against invidious discrimination among similarly-situated individuals . . . ." thereby ensuring that all similarly-situated people are treated alike. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Ibid.* In other words, unless the plaintiff shows that a law (as written or as enforced) treats people who are in the same position differently, a successful equal-protection claim cannot be made. Should that threshold be met, a court will then proceed to review the government action under the default "rational basis" standard, unless the plaintiff claims a government action that "infringes on a class of people's fundamental rights [or] targets a member of a suspect class," in which case the court employs strict scrutiny. *Ibid.*

The Dog Pound cannot meet the threshold showing of disparate treatment. To date, it has yet to apply for a license under the amended ordinance and cannot, therefore, have been treated differently from others similarly situated. The Dog Pound filed a license application in 2009, the

4

denial of which led to the present lawsuit. In 2010, The Dog Pound did not submit a license application. In 2011, the City of Monroe amended its ordinance, eliminating the restricted area downtown, thereby obviating most of the claims presented in the plaintiff's original complaint and in light of which the district court denied the plaintiff's motion for a preliminary injunction. Following the amendment of the ordinance, the plaintiff filed an application in 2011. However, that application was incomplete and rife with errors. Far from containing, as the plaintiff claimed, an indication "that it will block the application," the city's response in fact declared that "[t]he application will be granted subject to the following . . . ." The city then went on to point out, rather helpfully, all of the application's deficiencies and how each could be remediated. No further action was taken by the plaintiff and the application's errors were left unaddressed. In 2012, the plaintiff again failed to file an application.

Because The Dog Pound never completed an application under the amended ordinance it could not have been treated differently from others similarly-situated. There is therefore no issue of material fact and the district court was correct to grant summary judgment.

B

The Dog Pound's second amended complaint also included an alleged violation of the dormant Commerce Clause based on a claim that "the act, including its amendment" was designed "to favor and protect existing local businesses."

"The modern law of what has come to be called the dormant Commerce Clause is driven by concern about economic protectionism." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (internal quotation marks omitted). This doctrine is designed to ensure that a state cannot, "build up its domestic commerce by means of unequal and oppressive burdens" placed upon out-of-state businesses. *Guy v. City of Baltimore*, 100 U.S. 434, 443 (1879). The question

5

under the dormant Commerce Clause is not whether local, brick-and-mortar businesses are being supported at the expense of local itinerant vendors, but whether the ordinance favors in-state businesses over out-of-state businesses.

No such concerns present themselves in this case. It is hard to imagine how the ordinance, as presently written, could produce disparate treatment as between in-state and out-of-state hawkers, peddlers, and transient merchants. All such businesses are required to file a license application. All such businesses are subject to the 10-minute rule equally. There is no allegation of any fact in any iteration of the plaintiff's pleadings that would demonstrate a violation of the dormant Commerce Clause by subjecting only out-of-state business to an oppressive burden. Nor was any fact alleged that would tend to demonstrate any desire on the part of the City of Monroe to protect in-state businesses at the expense of out-of-state businesses. The Dog Pound offered no more than a bare assertion that the City's conduct "has unfairly discriminated against interstate commerce."

Since The Dog Pound alleged no facts in support of its dormant Commerce Clause claim, there cannot be a genuine dispute as to any material fact. The district court was correct to grant summary judgment.

C

The Dog Pound also raised a due-process claim that the ordinance, its amendment, and the denial of the plaintiff's 2009 application were undertaken "with the specific purpose of preventing" the plaintiff from competing with local business and that this was "the Act's sole purpose." This claim, new to the first amended complaint and re-appearing in the second amended complaint, was abandoned in the appellant's brief. The claim is, therefore, waived for the purposes of this appeal. *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th

Cir. 2003) ("An appellant waives an issue when he fails to present it in his initial briefs before this court.").

D

A final issue remains unresolved: The Dog Pound's state-law claims. The appellant argues that the district court did not properly address its claims for relief arising under the Due Process and Equal Protection clauses of the Michigan Constitution. (Pet'r's Br. 35). Although the plaintiff almost certainly misconstrues the district court's disposition of its state-law claims (all of which were adjudicated on the merits), the disposition of these state-law claims is irrelevant because the plaintiff has again waived its arguments by failing to advance them on appeal.

The district court found in favor of the defendant, granting its motion for summary judgment and dismissing the case with prejudice, thereby rendering a judgment on all of The Dog Pound's claims. In doing so, the district court addressed the substance of both of The Dog Pound's claims under the state constitution because the Due Process and Equal Protection clauses of the Michigan Constitution have both been held by Michigan's appellate courts to be construed as coextensive with their federal counterparts. *See Vargo v. Sauer*, 576 N.W.2d 656, 661 (Mich.1998) (declaring that the wording of the Michigan Constitution's Equal Protection Clause is to be interpreted "to offer similar protection as the wording of the parallel clause in the United States Constitution."); *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 438 (Mich. Ct. App. 2009) ("This state's constitutional provision is coextensive with its federal counterpart."). Accordingly, the state constitutional claims were implicitly disposed of by the same reasoning as the claims under the United States Constitution which, as it happens, appeared alongside one

another in each relevant count of The Dog Pound's complaint. Thus the allegation that the district court "completely ignored the state constitutional claims" is simply in error.

Regardless, the appellant is required to articulate an argument in support of its claim in its opening brief in order to preserve that claim on appeal. Federal Rule of Appellate Procedure 28(a)(8) requires that the appellant's brief include an "argument" containing the "appellant's contentions and the reasons for them." Fed. R. Civ. P. 28(a)(8)(A). *See also Marks*, 342 F.3d at 462. Although it is true that The Dog Pound mentions its state constitutional claims in its appellate brief, it did not advance a single argument as to why the judgment of the district court dismissing those claims with prejudice was in error. No attempt was made to distinguish between the federal and state constitutional claims nor was the district court's reasoning brought into question with respect to the state constitutional provisions. Because The Dog Pound raised no argument on appeal as to why the district court's dismissal of the state constitutional claims was in error, the appellant has waived this issue on appeal.

IV

For the forgoing reasons, we AFFIRM the district court's grant of summary judgment to the defendant.

**HELENE N. WHITE, Circuit Judge.  Concurring.**  I join in the majority's discussion of the dormant Commerce Clause claim and the state constitutional claims.  As to the remaining claims, I concur in the affirmance for the reasons stated by the district court.