COOK, Circuit Judge.
Vernon Smith challenges the district court’s grant of summary judgment in favor of the government in this action seeking the forfeiture of two cashier’s checks in the aggregate amount of $122,000. Discerning no error, we affirm.
I.
On August 9, 2007, federal agents seized two cashier’s checks from Vernon’s home during a search executed as part of a fraud investigation into Target Oil and Gas Corporation (“Target Oil”), a company run by Vernon’s sons that engaged in speculative oil drilling. A grand jury indicted the sons, Michael and Christopher, along with four other Target Oil employees for offenses arising from a fraudulent scheme to induce investment in the drilling business. The four employees pleaded guilty to conspiracy to commit mail and wire fraud, but Michael and Christopher proceeded to trial.
The trial evidence showed that Target Oil mailed potential investors information packets that often misrepresented past success and exaggerated future potential. United States v. Smith, 749 F.3d 465, 474 (6th Cir.2014). The company’s “closers” then followed up with more misleading information and pressured clients to invest. Id. When dissatisfied investors complained, the company offered them additional shares in underperforming wells. Id. at 475. In the end,'“[o]f the millions of dollars invested in the company, only thousands of dollars were returned as royalties.” Id. at 474. The jury convicted Michael of conspiracy and eleven counts of mail fraud, and Christopher of seven counts of mail fraud. In convicting, the jury found that the cashier’s checks seized from Vernon’s home constituted proceeds of the crimes. (R. 31-2, Jury Verdict at 2.) We affirmed the judgment of the trial court over the parties’ claimed errors. See Smith, 749 F.3d at 498.
Next came the case we review here, the government’s in rem civil forfeiture action to seize the two cashier’s checks in the amount of $60,649.64 and $100,000. Vernon claimed ownership of the checks, and the government then moved for summary judgment, pointing to evidence that Vernon used investor money from Target Oil to purchase the checks. The district court found that $122,000 of investor money funded the cashier’s checks, and because the company’s scheme to defraud was “so pervasive[,] ... any money taken from investors^] funds can be considered the proceeds of a scheme or artifice to defraud.” (R. 43, Am. Op. & Order at 16- *243 18.) After rejecting Vernon’s innocent-owner defense, the district court ordered a forfeiture of the checks in that partial amount. Vernon appeals.
II.
We review de novo the district court’s grant of summary judgment, Briscoe v. Fine, 444 F.3d 478, 485 (6th Cir.2006), affirming if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,” Fed.R.Civ.P. 56(a).

A. Proceeds

Vernon first argues that the district court “applied the wrong legal standard” in concluding that the $122,000 constituted forfeitable proceeds. Under the civil forfeiture statute, ‘“proceeds’ means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to the forfeiture.” 18 U.S.C. § 981(a)(2)(A). According to Vernon, the court should not have treated all of Target Oil’s investor funds obtained during the conspiracy as “proceeds” because the government needed to prove that the overt acts of fraud directly generated the funds Vernon claimed.
But the statutory language — defining proceeds to include property obtained “directly or indirectly” from the crime — and our criminal forfeiture cases endorse no such stringent standard. For instance, in Michael and Christopher’s appeal, we held that the investor money that funded the purchase of the cashier’s checks constituted forfeitable proceeds because “the transactions ‘all resulted directly or indirectly from a conspiracy to commit fraud.’ ” Smith, 749 F.3d at 488-89 (citation omitted); see also United States v. Warshak, 631 F.3d 266, 332 (6th Cir.2010) (holding entirety of the business’s revenue constituted forfeitable “proceeds that resulted, whether directly or indirectly,” from the conspiracy). Notably, Smith did not require evidence linking the funds to specific overt acts. 749 F.3d at 488 (“Ample evidence also supports the district court’s finding that Target Oil was used as a vehicle to commit fraud. The court concluded that fraud touched everything— from Target Oil’s banking accounts to its day-to-day operations — meaning that the various items connected to Target Oil’s revenue stream are subject to forfeiture.” (internal reference omitted)). Vernon makes no argument that we should interpret the civil forfeiture statute differently than the criminal forfeiture statute, and we see no reason to do so. Compare 18 U.S.C. § 981(a)(2)(A) (defining forfeitable proceeds in civil context as “property ... obtained directly or indirectly, as the result of the ... the offense”), with 18 U.S.C. § 982(a)(2) (providing for criminal forfeiture of the “proceeds the person obtained directly or indirectly, as the result” of the offense).
Vernon argues that his circumstances fall outside of the standard applied by our precedent for two reasons. First, he denies the existence of the conspiracy to defraud. But our previous decision held otherwise. See Smith, 749 F.3d at 488. Second, he points to two district court cases defining proceeds as “property that a person would not have but for the criminal offense,” see, e.g., United States v. Coffman, 859 F.Supp.2d 871, 875 (E.D.Ky. 2012), to argue that the government cannot satisfy this standard because his money flowed from legitimate transactions predating Michael and Christopher’s specific fraudulent acts. But this argument ignores the government’s authority to seize the proceeds that resulted directly or indirectly from the conspiracy to commit fraud, 18 U.S.C. § 981(a)(1)(C), which began before Vernon obtained the money. *244 See also Warshak, 631 F.3d at 332 (finding argument that the government could not seize the proceeds from legitimate transactions without merit because “[a]ny money-generated through these potentially legitimate sales ... resulted ‘directly or indirectly’ from a conspiracy to commit fraud”). In sum, Vernon fails to highlight any legal error by the district court.

B. Investor Funds

Next, Vernon argues that district court erred in tracing $75,000 used to purchase one of the cashier’s checks to investor funds, offering a different explanation — unrelated to the fraud — for how the money appeared in his account. But Vernon initially acknowledged in his response to the government’s summary-judgment motion that the government conducted an “extensive' review” of the relevant bank records and could trace the amount to investor funds. (R. 31-1, Mem. at 3, 5 (requesting the court overrule the government’s summary judgment motion as to “portions of the cashier’s checks,” and acknowledging that $122,000 came from investor funds, necessarily including the $75,000 that bought cashier’s check number 0022175).) Indeed, an exhibit that the government attached to its verified complaint reflects this exhaustive review. It details how Target Oil purchased a compressor with investor funds before selling it for $75,000 and depositing that money into its operating account. Then, Michael withdrew $75,000 from that account and purchased a cashier’s check in that amount, depositing it in an account held jointly with Vernon, his father. Vernon, in turn, withdrew that $75,000 to apply it to the purchase of the seized $100,000 cashier’s check. (R. 1-5, Bottoms Aff. Ex. B at 1-6.)
Vernon now disparages that exhibit, arguing that it cannot qualify as “legally competent evidence,” though he lodges no specific complaints with its detailed transactional history. (Reply Br. at 21-22.) Even if Vernon’s earlier concession does not estop him from changing positions on appeal, see Johnson v. U.S. Postal Serv., 64 F.3d 233, 237 (6th Cir.1995), his eviden-tiary challenge lacks merit. The government incorporated the exhibit in its complaint that it verified under 28 U.S.C. § 1746, and the verifying postal inspector’s affidavit identifies the exhibit as part of the analysis of the cashier’s checks performed during the fraud investigation. (R. 1, Verified Compl. ¶7; R. 1-2, Verification; R. 1-3, Bottoms Aff. ¶ 50.) The district court therefore properly considered the exhibit. See Am. Civil Liberties Union of Kentucky v. Grayson Cnty., Ky., 591 F.3d 837, 844 n. 2 (6th Cir.2010) (“A verified complaint carries the same weight as would an affidavit for the purposes of summary judgment.”) (internal quotation marks omitted).
Vernon’s alternative theory for the $75,000 similarly lacks merit. He points to the affidavit of a Target Oil accountant that states the $75,000 came from the legitimate sale of a drill rig, not the compressor purchased with investor funds. (Appellant Br. at 23, 36-38; R. 34-2, Butler Aff. ¶ 6.) But Vernon offers no evidence that his sons or their companies deposited those sale proceeds into the Target Oil account (Citizens Bank 2016443) that ultimately funded the seized cashier’s check. The accountant has no firsthand knowledge of that; his belief that the deposit occurred stems entirely from his “recollection of a conversation with Mi[chael] Smith in April 2004.” (See R. 34-2, Butler Aff. ¶ 6.) We cannot credit such conjecture. See Fed.R.Civ.P. 56(c)(4) (“An affidavit ... must be made on personal knowledge.”). And though Vernon offered a bank statement, check, and deposit slip showing that *245 the Target Oil account posted a $75,000 deposit and withdrawal on the same day, that aligns with the government’s tracing of funds to support its theory that the compressor funded the cashier’s check. (See R. 34-2, Butler Aff. Attached Docs.) Thus, we find no error in the district court’s conclusion that Vernon failed to present evidence creating a genuine issue of material fact about the source of the $75,000 used to purchase the seized cashier’s check.

C. Evidentiary Hearing

Vernon also contends that the district court needed to conduct an evidentiary hearing on his motion to correct the judgment because, according to Vernon, the government never carried its initial summary-judgment burden of tracing the investor money to “specific acts of mail fraud.” We review this claim for an abuse of discretion. Reynolds v. Bagley, 498 F.3d 549, 552 (6th Cir.2007). Having discerned no error in the district court’s application of our legal standard to determine what money qualified as forfeitable proceeds, we find that the district court acted within its discretion.

D. Innocent Owner

After the government established that the cashier’s checks were subject to forfeiture, the burden shifted to Vernon to demonstrate that he qualified as an “innocent owner” of the seized property. Vernon maintains that the district court erred in determining that he could not satisfy the innocent owner defense under 18 U.S.C. § 983(d)(2)(A). That provision applies to “property interests] in existence at the time the illegal conduct giving rise to the forfeiture took place.” Vernon claims that he had a pre-existing interest in the money, deposited by Michael, that he used to purchase the seized cashier’s checks, because he loaned Michael “in excess of $150,000 around 1980 so that [his son] could set up a sawmill business.” (R. 34-1, Smith Aff. ¶ 5.) Accepting this vague account of a 30-year-old business loan for the sake of argument, § 983(d)(2)(A) provides no protection for such an unsecured loan. See 18 U.S.C. § 983(d)(6)(B)(i) (stating that the term “owner” excludes “person[s] with only a general unsecured interest in, or claim against, the property or estate of another”). Accordingly, Vernon’s protectable ownership interest in the funds used to purchase the seized cashier’s - checks arose when Michael deposited them into their joint account between May 2003 and April 2004 — ie., when Vernon could exercise dominion over the funds. Because these deposits occurred after the start of his sons’ conspiracy in February 2003, see Smith, 749 F.3d at 488-89, the district court properly deemed § 983(d)(2)(A) inapplicable.
m.
We AFFIRM.